LOCAL 100 OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES et al., Appellants,

v.

H. N. BORDEN, Appellee.

No. 15930.

Court of Civil Appeals of Texas.

Dallas.

Feb. 9, 1962.

Rehearing Denied March 23, 1962.

Mullinax, Wells, Morris & Mauzy and George Schatzki, Dallas, for appellants.

Lyne, Blanchette, Smith & Shelton, Robert W. Smith, Dallas, for appellee.

YOUNG, Justice.

This is a damage suit brought by Borden, appellee, against two unincorporated labor unions—appellant Local 100 and the parent body of similar name. Borden sought money damages both actual and punitive, for loss of earnings and mental anguish, arising out of allegedly wilful, malicious and discriminatory course of conduct of the two unions; same consisting of the refusal of the unions to treat appellee as any other union member and to refer him to a job offered him in the construction of the Republic National Bank Building. His suit is based on allegations involving both tort and contract.

This suit had been previously dismissed by the trial court on plea in abatement, and on appeal to this Court was reversed and remanded to the trial court for trial to the merits. On writ of error granted by our Supreme Court, the opinion of reversal was affirmed; it holding that a cause of action would lie if plaintiff "was willfully denied a job opportunity to which Lanham [the Local Union Business Manager], knew he was entitled under the rules and procedures established by petitioners for allocating work among their members, and that petitioners either conspired with Lanham to bring this about or otherwise authorized or ratified his wrongful conduct * * *." United Association of Journeymen, et al. v. Borden, 160 Tex. 203, 328 S.W.2d 739; see also 316 S.W.2d 458 for further background of case and conclusions of this Court.

The facts material to appellee's claim of injury are generally outlined in the following summary of the numbered jury issues and answers: (1) that on or about Sept. 16, 1953 plaintiff Borden was promised a job on the Republic National Bank Building by the authorized foreman of the Farwell Construction Company; (2) that at a time when plaintiff was available for work, a call was placed by A. G. Thurman calling

for plaintiff to go to work upon said Republic Bank Building; (3) that defendant Local Union 100 by and through its business manager Cleo Lanham, thereafter did not refuse to accept plaintiff's clearance card from his local union in Shreveport, Louisiana; (5) that said defendant Local Union 100 wrongfully refused to let plaintiff work on said Republic Bank Building; (6) that such refusal was made at a time when said Cleo Lanham knew that under the rules of said local union plaintiff was entitled to work on said bank building; (7) that such refusal to let the plaintiff work on said bank building was *not* without any cause or reason whatsoever; (8) that with full knowledge of the conduct of Cleo Lanham concerning plaintiff, the officers and members of defendant Local Union 100 approved such conduct; (9) that had plaintiff been allowed to work on the Republic Bank Building from Sept. 15, 1953 to Sept. 15, 1954 he would have earned $5,856; (10) plaintiff earned, or by use of reasonable diligence, could have earned during same period the amount of $3,940; (11) that plaintiff, by being denied the Republic Bank job opportunity, suffered mental anguish; (12) which was proximately caused by defendants Local Union 100; (13) reasonable compensation for the mental anguish suffered was $1500; (14) that plaintiff should be awarded $5,000 as punitive damages against defendant Local Union 100; (15) that plaintiff, after having been refused the job opportunity to work on the Republic Bank Building, *did fail* to pursue his grievance within the rules and procedures of said Local Union 100 that were available to him; (16) that plaintiff voluntarily accepted other work in October 1953 upon referral from defendant Local 100 without complaint; (17) but that plaintiff *did not* acquiesce in defendant Local 100 actions; (19) plaintiff *did not* fail to apprise defendant Local 100 of his complaints; (22) that it would have been useless for plaintiff to have pursued his complaint within the rules and procedures of the defendant Local 100.

In this connection the court overruled the motion for summary judgment of Local Union 100 seasonably filed and carried along to close of evidence; also its motion for judgment on the verdict; and in the alternative, its motion for judgment non obstante veredicto. Plaintiff's motion to disregard jury answer to issue No. 7 and for judgment on remainder of the jury verdict was sustained; holding however that in a suit of this type the issue of mental anguish was not raised and should not have been submitted; also that the amount of the punitive damages so found was excessive; and that plaintiff should be required to reduce the punitive damages to an amount not exceeding the actual damages sustained, or a total judgment of $3,832 to which plaintiff duly excepted, defendant Local Union 100 likewise excepting to all of above adverse rulings. A peremptory instruction had been given in favor of the parent union to which plaintiff duly excepted.

■ Appellant again asserts exclusive application of 29 U.S.C.A. § 151 et seq., (Taft-Hartley Act) to this lawsuit.[1]

In this plea to the jurisdiction it is argued that answer to issue No. 5—wilful refusal of defendant Local Union 100 through Lanham that the plaintiff work on said Republic Bank Building—constituted an unlawful labor practice within provisions of Section 158(b) which reads: "It shall be an unfair labor practice for a labor organization or its agents * *` * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section * * *". The material part of subsection (a) (3) of § 158 reads as follows: "It shall be an unfair labor practice for an employer— * * * (3) by discrimination in regard to hire or

---

1. The same jurisdictional plea had been previously raised on appeal to this Court (316 S.W.2d 458) and overruled but not interposed on writ of error to the Supreme Court of Texas. See 160 Tex. 203, 328 S.W.2d 739.

tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *."

The suit of Borden as already stated was based on both contract and tort. Even if Borden be considered an employee, which appellee denies, Farwell Construction Company, the contractor and employer, was not a party to the suit and there is no evidence that it practiced any discrimination against Borden or treated him anywise different from other employees. He was simply offered a job and requested to obtain a referral from Local Union 100 as were all other employees of Farwell. By plain wording of the Act, the discrimination must be limited to purpose of encouragement or discouragement of membership in the union and plaintiff was already a member. This is a suit for wrongs allegedly committed against plaintiff by arbitrary conduct of Local Union 100; and as held in International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, the Labor Management Relations Act does not displace state court jurisdiction over suits to determine and enforce rights of union members in their union. In the cited cases it is stated: "But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied. The proviso to § 8(b) (1) of the Act states that 'this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *.'" The point is again overruled.

Appellants' further points should now be stated: Of court error; (2) because Lanham had no duty to refer Borden to the job site as requested; (3) because the denial by Lanham of a referral was not the cause for Borden's failure to obtain employment at the Bank site; (4) because the union was not responsible for Lanham's acts; (5) in admitting into evidence inflammatory, irrelevant and incompetent evidence; (6) because the finding of Thurman's authority to hire was contrary to the great weight and preponderance of the evidence; (7) in not barring the plaintiff's recovery because of his failure to exhaust remedies within the union; (8) in not finding that the plaintiff was barred from recovery by laches and/or estoppel; (9) in awarding punitive damages; (10) in not setting aside the verdict and declaring a mistrial because the jury's answer to Special Issue No. 5 contradicted and conflicted with the jury's answer to Special Issue No. 7. All of above points were appropriately countered by appellee.

Local Union 100 is an unincorporated association of some 800 membership in 1954, plaintiff being a member of that union. Members of one Local of the parent association can transfer to any other Local if in good standing. A clearance card is a devise by which a home local certifies that a member is in good standing. When this card is presented to a local under whose auspices the member seeks to work, the member is in all respects transferred to that Local. A member may also commence work in a certain locality by placing a deposit with the Local Union and later securing his clearance card.

A résumé of material evidence bearing on all points and counterpoints (though generally disputed) is presented in the brief of appellee: that in mid-September 1953 Borden arrived in Dallas and called Jack Heath, superintendent for Farwell Construction Company. He had previously worked for this company in Galveston, being there told that he could work for said company on the Republic job site. On coming to Dallas Borden then presented his dues book to Lanham, business manager of Local Union 100; Lanham then telling him that he had come to Dallas "with a job in his pocket" and refused to accept Borden's dues book, further telling him that he would never go to work on the Bank Building and that the best thing for him to do was to get out of town. It was undisputedly the uniform practice of Local Union 100 that in case a

particular man was requested by a contractor, to send that man to work on that project—a practice, according to Galvin, successor to Lanham, that had been in effect during the eleven years of his connection with Local 100.

After this initial contact with Lanham, Borden returned to his home local at Shreveport, securing his clearance card and returning to Dallas, then seeking to present such card to Lanham. After several attempts, Borden found Lanham in a cafe across the street from the Union Hall and offered his clearance card. On return to the union office Lanham accepted the clearance card but told Borden "that don't mean you are going to work by any means." In the meantime, according to A. G. Thurman, foreman of the Bank project, Borden had called him, stating that he was in town, desiring a job and had placed a clearance card with Local 100, Thurman saying "if you get a referral come on down" that he (Thurman) later called Lanham requesting that Borden be referred to the Bank project, to which Lanham replied "I am not about to send that old S-O-B down there. He shoved his card down our throats and I am not about to send him to the Bank."

Borden testified that continually thereafter he had requested employment on the Bank site but was continually denied work going on there from September 15, 1953 to September 15, 1954; and it is not disputed that plaintiff held himself available for work on the bank job during all that time; in the interval, being referred to several other jobs by Lanham; that he had complained to Zeufeldt, business agent of the Union, also to several other members of the discriminatory treatment here alleged; further that in October 1953 at a general membership meeting, his complaint was discussed in the executive minutes of the union which were then read; it being stated at that time and called to attention of the union that Borden was not referred to the Bank site because "he came in here wrong" and would not be allowed to work there. There was further testimony that the executive minutes read at

that meeting had been subpoenaed but reported lost while in possession of Zuefeldt, the business agent. There was testimony of Borden's continued complaint concerning this discriminatory treatment, further evidenced by conversation with Galvin, the successor business manager, who after hearing Borden's story, did nothing about the existing situation; that thereafter in October 1954 an executive meeting of Local Union 100 was held to consider plaintiff's charges; that at such meeting the Executive Board had maligned Borden, telling him to quit complaining about the treatment he had received from the union, if not, they would expel him from the union and kick him out of Dallas; that the best thing he could do would be to "get out of Dallas". As a result of his appearance before the Executive Committee, Borden said that he was thereafter in fear of bodily harm at the hands of said Union.

It is rather difficult to follow appellants' argument that "Lanham had no duty to refer Borden to the job site requested" in view of its established policy, that once a request is made by an employer for a specific employee, that person is immediately referred to the job site. That this was the uniform practice is explicit in the testimony of foreman Thurman; he stating that in obtaining employees he would place calls with Local 100 which is "the end of my obligation in getting a man on the job"; further testifying that all employees hired by him came through the union office; answering "No, Sir" to the question "Have you ever hired anyone on the job except through Union referral, as is the custom here"; and the record as hereinabove narrated, in our opinion constituted sufficient proof that respondent was wilfully denied a job opportunity to which Lanham knew he was entitled to under the rules and procedures established by petitioners for allocating work among their members. Supreme Court 328 S.W.2d 739.

With respect to point three, the referral of plaintiff to the Bank site for work at re-

quest of Thurman was in accordance with above union custom, refused by Lanham, with resulting injury to plaintiff. A direct solicitation of the job by him would have been in violation of union rules, Art. 1, § 30, providing: "Members shall not solicit work from any contractor or their representative. All employment must be procured through business office of Local Union 100. Violations of this Section subject to assessment of not less than Five Dollars ($5.00). * * *."

■ Appellant argues the lack of evidence of any responsibility on part of the union for the acts of Lanham, the jury having found that with full knowledge of the conduct of Lanham, "the officers and membership of defendant Local 100 approved such conduct" (issue 8). We think that record testimony already stated raised the issue. Zuefeldt, the business agent, also Galvin, successor to Lanham, testified to Borden's complaint of discrimination. B. C. Hall, had testified to attendance upon a business meeting of the union in October 1953 (the minutes of which were later lost) at which time Borden's case was discussed, it being stated that he "came in wrong and that plaintiff was not going to get the requested job because they (the union) weren't going to refer him to the job." Although no action was there taken by the membership, such inaction under the facts of this record must be held tantamount to approval of the prior conduct of Lanham and a consequent ratification. Concerning silence or inaction as ratification, see Cameron v. Gibson, 278 S.W. 522, 525 where the court quotes from 2 C.J. p. 504, 505 as follows: "Mere silence or delay on the part of a principal in repudiating the unauthorized act of an agent does not necessarily amount to a ratification, but while it is not necessarily conclusive evidence of a ratification, unless it cannot be explained on any other theory, it is always an element to be considered in connection with other evidence tending to show a ratification, and may alone be sufficient to justify a finding of ratification, particularly where the circumstances impose a special duty upon the principal to speak, as where

the other party is liable to be misled or injured by his failure to do so." See also 2 C.J.S. Agency § 57, p. 1126.

■ Excerpts of admitted testimony is quoted by appellant which is complained of as "inflammatory, irrelevant and incompetent." Such evidence relates principally to a prior practice of the local to refuse clearance cards to outside workmen; bearing, according to appellee, on knowledge by defendant of the discriminatory acts of Lanham. As such, they may be deemed relevant. Nor are the conversations had with Thurman, same being inclusive of the job offer to Borden excludable as hearsay. Thurman, the job foreman, was a member of said local, all members of which were adverse parties to plaintiff. In this connection, appellant says that the jury finding under issue one of the promise to plaintiff by Thurman, authorized foreman of the Farwell Construction Company, was contrary to the great weight and preponderance of the evidence; and the testimony of Northington, general superintendent, is cited that "if anybody was hired I looked for one thing, that it was either Mr. Heath (plumbers) or Mr. George (steamfitters)." Here, while facts of the alleged agency may not be shown by declarations of the agent alone, such constitutes original evidence, and not objectionable as hearsay. Cook v. Hammer, 158 Tex. 164, 309 S.W.2d 54. Thurman, plumber foreman, testified that workers on the Republic Bank job were hired by him, he calling Local 100 office and asking for men as needed, the union manager issuing a referral to the job site. Concerning authority to hire his own men, Thurman testified, to a conversation with Heath, plumbing superintendent, (now dead) as follows: "Q Did you know Jack Heath? A Yes, sir, very well. Q What job did he have on that? A He was general superintendent. Q He did the hiring on the job, did he not? A Not necessarily, he hired the foremans or set men up as foremans, but the foremans hired their own men as they sought fit." The testimony of Northington, general superintendent of Farwell, was in nowise contra-

dictory to the above; his answers on cross-examination going no further than that he looked to George and Heath for satisfactory results. And issue one is not objectionable as multifarious and duplicitous. The fact of a job offer by Thurman to Borden is not disputed, the authority of the former to make such an offer being only at issue. Appellant could not have been injured by this combination of a disputed issue with the undisputed one. Goodrich v. First National Bank, writ ref., 70 S.W.2d 609.

■ The jury found that though Borden failed to exhaust the remedies available to him through union channels, also that pursuit of remedies, rules and procedures of the union would have been useless. Appellant asserts that plaintiff's claim is barred· because of such failure, but the point is overruled. The Constitution and By-Laws of both parent association and defendant Local deal strictly with assessments, suspensions and expulsion, no where providing for a procedure whereby an allegedly wronged member may make claim for back wages or damages for discriminatory practices as in the instant situation and the testimony was clear that any application of union sanctions would have resulted only in the punishment of Lanham. Clearly, therefore, the pursuit of any remedies against the union by Borden would have been ineffectual, illusory and futile as well. In Anderson, et al. v. Painters' Local Union No. 318, 161 Tex. 129, 338 S.W.2d 148, 151 is stated the general rule as set forth in 168 A.L.R. pages 1472–1473 that: " * * * it is pretty generally held that where exhaustion of remedies within the union would amount to a practical denial of justice to the expelled or suspended member, *or would be illusory or vain,* it will not be insisted upon, particularly where property rights of the member are involved, as a condition to the right to invoke the aid of a court of equity for reinstatement to and restoration of membership." (Emphasis ours.)

■ Appellant contends that the suit should be barred by laches or estoppel. The material facts relative to this point have heretofore been sufficiently detailed. The action was brought approximately a year after it became clear to plaintiff that he could proceed no further within the framework of the union (except for the vain and illusory appeal just discussed) and no laches is shown, defined in 27 Tex.Jur. p. 16, as "inexcusable delay in asserting an equitable claim." Nor is equitable estoppel involved; an element of which is "the effect of the *voluntary* conduct of a party whereby he is absolutely precluded, both in law and in equity, from asserting the right that might perhaps otherwise have existed * * *." (Emphasis ours.) (22 Tex.Jur.2d p. 664). Under the restrictive provisions of defendant Local's By-Laws and Constitution, plaintiff had no alternative other than to work at other job sites on referrals by the union. Through economic compulsion plaintiff was required to accept these referrals and his action cannot be said to be voluntary within meaning of this equitable doctrine. There was no detrimental reliance thereon, or change of position by the union; and appellee though referred to other jobs did not abandon his quest for employment on the Bank site.

■ Appellant charges an absolute lack of evidence on which to base any punitive damages or of knowledge by the membership of the wilful nature of Lanham's conduct. The latter phase of such point has already been touched upon; as also the sufficiency of evidence in support of the jury's answer (issue 8) that "the officers and members of said defendant Local Union approved such conduct." The term "wilfully" was properly defined and it is well settled that when the conduct is shown to be wilful, punitive damages are recoverable. Briggs v. Rodriguez, Tex.Civ.App., 236 S.W.2d 510.

Lastly appellant says that the jury answers to issues 5 and 7 are contradictory and irreconcilable, and that because of such conflict a mistrial should have been declared. The jury answered "yes" to issue 5 reading: "Do you find from a preponderance of the

evidence that the said defendant Local Union 100, acting by and through Cleo Lanham, wilfully refused to let the plaintiff work on said Republic National Bank Building?" Issue 7, to which the jury answered "No" reads: "Do you find from a preponderance of the evidence that such refusal to let the plaintiff work on said Republic National Bank Building, if you have so found, was without any cause or reason whatsoever?" During its consideration of the latter issue the jury questioned the trial Judge as follows: "Does 'without any cause or reason' mean without any reason whatsoever (personal or otherwise) or does it mean without reason according to the union by-laws?" to which the court replied: "In answer to such communication you are instructed that: 'It means a cause or reason' which was actuated by an intent that was not in good faith. A denial, even though erroneous, which resulted merely from negligence, inadvertence or mistake would not be without any cause or reason whatsoever."

In due course appellee made motion to disregard the jury's answer to issue 7 as not ultimate or controlling and for judgment on the remaining answers which the court granted and so found in final judgment.

Appellant now argues that "Findings 5 and 7, considered separately and taken as true, would compel different judgments. The Supreme Court, in its earlier decision in this matter, stated that the union was not liable if Lanham's action, although wrongful, resulted from negligence, inadvertence or mistake. By Special issue No. 7 the jury so found, and it follows that the union is not liable. On the other hand, the Supreme Court stated that if Lanham wilfully denied Borden a job opportunity, and other named conditions were present as well, the union was liable." We do not pause to interpret the effect of jury answer to issue No. 7 aided (if it was) by the Court's extraneous instruction thereon in answer to their inquiry.

In the first place, issue 7 was eliminated by the court in final judgment, its rendition being for plaintiff on the remaining jury findings. There could be no basis therefore for claim of irreconcilable conflict of issues; and while appellant took exception to the court's action in so disregarding issue No. 7 and answer, same was not brought forward in any point on appeal. Furthermore, the issue was evidentiary at best. In deciding whether these findings are in direct and irreconcilable conflict, the entire charge and all of the verdict must be considered. 41 Tex.Jur. Trial, p. 794, and we must not presume that the jury intended to render conflicting answers. Swift & Co. v. Phillips, Tex.Civ.App., 314 S.W.2d 326. In issue No. 5 the jury had already found that the conduct of Cleo Lanham was wilful; the term meaning, under the court's charge, "the intentional and purposeful disregard of the known rights of another". And any "cause or reason" for Lanham's refusal to refer plaintiff to the job site is explicit in the testimony of the latter, also Thurman's, already sufficiently detailed. The point is accordingly overruled.

Appellee's crosspoint No. 1 the jury had made an award to plaintiff of $5,000 as punitive damages which the trial court found to be "unjust and excessive under the facts and that the plaintiff should be required to remit to the extent of such punitive damages not to exceed the actual damages awarded * * *." By subtraction, (issues 9 & 10) the punitive damages awarded was reduced to $1,916. Appellee in turn asserts error in this requirement of remittitur of $3,084; pointing out that the jury verdict is not excessive under the test laid down in 13 Tex.Jur. p. 396, and followed by the adjudicated cases. However, in the recent case of Flanigan v. Carswell, 159 Tex. 598, 324 S.W. 2d 835 our Supreme Court held that a Court of Civil Appeals in passing upon a trial court's action in ordering a remittitur must determine propriety of the order by deciding whether such trial court has abused its discretion.

In the light of all the facts and circumstances of this case, we cannot say that

738

the action of Judge Stout in this connection was manifestly unjust and hence overrule the crosspoint.

All points of appeal are accordingly overruled and judgment of the trial court is in all respects affirmed.