## LOCAL 100, UNITED ASSOCIATION OF JOURNEY-
MEN & APPRENTICES, *v.* BORDEN.

No. 541.. Argued April 24, 1963.—Decided June 3, 1963.

*L. N. D. Wells, Jr.* argued the cause for petitioner. With him on the briefs was *Charles J. Morris.*

*Robert Weldon Smith* argued the cause for respondent. With him on the brief was *Ewell Lee Smith, Jr.*

*J. Albert Woll, Robert C. Mayer, Theodore J. St. Antoine* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case presents one facet of the recurrent problem of defining the permissible scope of state jurisdiction in the field of labor relations. The particular question before us involves consideration and application, in this suit by a union member against a local union, of the principles declared in *International Assn. of Machinists v. Gonzales*, 356 U. S. 617, and *San Diego Building Trades Council v. Garmon*, 359 U. S. 236.

## I.

The respondent, H. N. Borden, who was then a member of the Shreveport, Louisiana, local of the plumbers union, arrived in Dallas, Texas, in September 1953, looking for a job with the Farwell Construction Company on a particular bank construction project. Farwell's hiring on this project was done through union referral, although there was no written agreement to this effect. Borden was unable to obtain such a referral from the business agent of the Dallas local of the plumbers union, even after the agent had accepted Borden's clearance card from the Shreveport local and after the Farwell foreman on the construction project had called the business agent and asked to have Borden sent over. According to Borden's testimony, the business agent told him:

> "You are not going to work down there on the bank job or for Farwell, you have come in here wrong, you have come in here with a job in your pocket."

And according to the Farwell foreman, the business agent answered his request by saying:

> "I am not about to send that old ——— down there, he shoved his card down our throat and I am not about to send him to the bank."

Borden never did get the job with Farwell, although he was referred to and accepted several other jobs during the period before the bank construction project was completed.

Subsequently, he brought the present suit against the Dallas local, petitioner here, and the parent International,[1] seeking damages under state law for the refusal to refer him to Farwell. He alleged that the actions of the defendants constituted a willful, malicious, and discriminatory interference with his right to contract and to pursue a lawful occupation; that the defendants had breached a promise, implicit in the membership arrangement, not to discriminate unfairly or to deny any member the right to work; and that the defendants had violated certain state statutory provisions.[2]

Petitioner challenged the state court's jurisdiction, asserting that the subject matter of the suit was within the exclusive jurisdiction of the National Labor Relations Board. The trial court upheld the challenge and dismissed the suit, but on appeal the Texas Court of Civil Appeals, relying on this Court's decision in *International Assn. of Machinists* v. *Gonzales, supra,* reversed and remanded for trial. 316 S. W. 2d 458. The Texas Supreme Court granted a writ of error on another point in the case and affirmed the remand. 160 Tex. 203, 328 S. W. 2d 739.

At trial, the case was submitted to the jury on special issues and the jury's answers included findings that Borden had been promised a job by a Farwell representa-

---

[1] The trial court granted a directed verdict in favor of the parent International, and the parent organization is therefore no longer in the case.

[2] Tex. Civ. Stat. Ann., 1962, Art. 5207a—"Right to bargain freely . . ."—was cited by Borden in his complaint. This statute, however, was not relied upon by the courts below as supporting recovery, and its effect need not be considered here.

tive; that the Farwell foreman asked the union business agent to refer Borden; that the business agent "wilfully" refused to let Borden work on the bank project, knowing that Borden was entitled to work on that project under union rules; and that the conduct of the business agent was approved by the officers and members of petitioner. Actual loss of earnings resulting from the refusal to refer Borden to the Farwell job was found to be $1,916; compensation for mental suffering, $1,500; and punitive damages, $5,000. The trial court disallowed recovery for mental anguish and ordered a remittitur of the punitive damages in excess of the amount of actual damages, thus awarding total damages of $3,832. The Court of Civil Appeals affirmed, 355 S. W. 2d 729, again rejecting petitioner's preemption argument. Following denial of a writ of error by the Supreme Court of Texas, we granted certiorari, 371 U. S. 939, to consider the question whether federal labor law precludes the exercise of state jurisdiction over this dispute.

## II.

This Court held in *San Diego Building Trades Council v. Garmon,* 359 U. S. 236, that in the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of § 7 or the prohibitions of § 8 of the National Labor Relations Act.[3] This relinquishment of state jurisdic-

---

[3] 49 Stat. 452, as amended, 29 U. S. C. §§ 157, 158. We do not deal here with suits brought in state courts under § 301 or § 303 of the Labor Management Relations Act, 61 Stat. 156, 158, 29 U. S. C. §§ 185, 187, which are governed by federal law and to which different principles are applicable. See, *e. g., Smith* v. *Evening News Assn.,* 371 U. S. 195.

tion, the Court stated, is essential "if the danger of state interference with national policy is to be averted," 359 U. S., at 245, and is as necessary in a suit for damages as in a suit seeking equitable relief. Thus the first inquiry, in any case in which a claim of federal preemption is raised, must be whether the conduct called into question may reasonably be asserted to be subject to Labor Board cognizance.

In the present case, respondent contends that no such assertion can be made, but we disagree.[4] The facts as alleged in the complaint, and as found by the jury, are that the Dallas union business agent, with the ultimate approval of the local union itself, refused to refer the respondent to a particular job for which he had been sought, and that this refusal resulted in an inability to obtain the employment. Notwithstanding the state court's contrary view, if it is assumed that the refusal *and the resulting inability to obtain employment* were in some way based on respondent's actual or believed failure to comply with internal union rules, it is certainly "arguable" that the union's conduct violated § 8 (b) (1) (A), by restraining or coercing Borden in the exercise of his protected right to refrain from observing those rules, and § 8 (b)(2), by causing an employer to discriminate against Borden in violation of § 8 (a)(3).[5] See, *e. g.*,

---

[4] Respondent does not challenge the existence of the requisite effect on commerce to bring the matter within the scope of the Board's jurisdiction.

[5] Section 8 (a) of the Act provides that it shall be an unfair labor practice for an employer "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

Section 8 (b) of the Act provides that it shall be an unfair labor practice for a labor organization or its agents "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 . . . ," or "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) . . . ."

*Radio Officers* v. *Labor Board*, 347 U. S. 17; *Local 568, Hotel Employees*, 141 N. L. R. B. No. 29; *International Union of Operating Engineers, Local 524 A–B*, 141 N. L. R. B. No. 57. As established in the *Radio Officers* case, the "membership" referred to in § 8 (a)(3) and thus incorporated in § 8 (b) (2) is broad enough to embrace participation in union activities and maintenance of good standing as well as mere adhesion to a labor organization. 347 U. S., at 39–42. And there is a substantial possibility in this case that Borden's failure to live up to the internal rule prohibiting the solicitation of work from any contractor [6] was precisely the reason why clearance was denied. Indeed this may well have been the meaning of the business agent's remark, testified to by Borden himself, that "you have come in here wrong, you have come in here with a job in your pocket."

It may also be reasonably contended that after inquiry into the facts, the Board might have found that the union conduct in question was not an unfair labor practice but rather was protected concerted activity within the meaning of § 7. This Court has held that hiring-hall practices do not necessarily violate the provisions of federal law, *Teamsters Local* v. *Labor Board*, 365 U. S. 667, and the Board's appraisal of the conflicting testimony might have led it to conclude that the refusal to refer was due only to the respondent's efforts to circumvent a lawful hiring-hall arrangement rather than to *his* engaging in protected activities. The problems inherent in the operation of union hiring halls are difficult and complex, see Rothman, The Development and Current Status of the Law Pertaining to Hiring Hall Arrangements, 48 Va. L. Rev. 871, and point up the importance of limiting initial competence

---

[6] Section 30 of Article I of the bylaws of petitioner provides in pertinent part that "Members shall not solicit work from any contractor or their representative. All employment must be procured through Business Office of Local Union No. 100."

to adjudicate such matters to a single expert federal agency.

We need not and should not now consider whether the petitioner's activity in this case was federally protected or prohibited, on any of the theories suggested above or on some different basis.[7]  It is sufficient for present purposes to find, as we do, that it is reasonably "arguable" that the matter comes within the Board's jurisdiction.

## III.

Respondent urges that even if the union's interference with his employment is a matter that the Board could have dealt with, the state courts are still not deprived of jurisdiction in this case under the principles declared in *International Assn. of Machinists* v. *Gonzales*, 356 U. S. 617.  *Gonzales* was a suit against a labor union by an individual who claimed that he had been expelled in violation of his contractual rights and who was seeking restoration of membership.  He also sought consequential damages flowing from the expulsion, including loss of wages resulting from loss of employment and compensation for physical and mental suffering.  It was recognized in that case that restoration of union membership was a remedy that the Board could not afford and indeed that the *internal* affairs of unions were not in themselves a matter within

---

[7] As one possible additional basis on which the conduct in question might have been held to be prohibited, for example, petitioner refers us to the Board's recent decision in *Miranda Fuel Co.*, 140 N. L. R. B. No. 7, in which the majority held that a statutory bargaining representative violates § 8 (b) (2) "when, for arbitrary or irrelevant reasons or upon the basis of an unfair classification, the union attempts to cause or does cause an employer to derogate the employment status of an employee."  Again, we need not and do not pass upon the correctness of that decision or its applicability in the circumstances of this case.

the Board's competence.[8]   The Court then went on to hold that, in the presence of admitted state jurisdiction to order restoration of membership, the State was not without power "to fill out this remedy" by an award of consequential damages, even though these damages might be for conduct that constituted an unfair labor practice under federal law.   The Taft-Hartley Act, the Court stated, did not require mutilation of "the comprehensive relief of equity."   356 U. S., at 621.

The *Gonzales* decision, it is evident, turned on the Court's conclusion that the lawsuit was focused on purely internal union matters, *i. e.,* on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights.   In this posture, collateral relief in the form of consequential damages for loss of employment was not to be denied.

We need not now determine the extent to which the holding in *Garmon, supra,* qualified the principles declared in *Gonzales* with respect to jurisdiction to award consequential damages, for it is clear in any event that the present case does not come within the *Gonzales* rationale. The suit involved here was focused principally, if not entirely, on the union's actions with respect to Borden's efforts to obtain employment.   No specific equitable relief was sought directed to Borden's status in the union, and thus there was no state remedy to "fill out" by permitting the award of consequential damages.   The "crux" of the action (*Gonzales,* 356 U. S., at 618) concerned Borden's employment relations and involved conduct arguably subject to the Board's jurisdiction.

---

[8] Section 8 (b) (1) (A), it should be noted, contains a proviso to the effect that "this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein."

Nor do we regard it as significant that Borden's complaint against the union sounded in contract as well as in tort. It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction. Rather, as stated in *Garmon, supra,* at 246,

"[o]ur concern is with delimiting *areas of conduct* which must be free from state regulation if national policy is to be left unhampered." (Emphasis added.)

In the present case the *conduct* on which the suit is centered, whether described in terms of tort or contract, is conduct whose lawfulness could initially be judged only by the federal agency vested with exclusive primary jurisdiction to apply federal standards.

Accordingly, we conclude that the judgment of the court below must be                      *Reversed.*

MR. JUSTICE GOLDBERG took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE CLARK concurs, dissenting.

While I dissented in *International Association* v. *Gonzales,* 356 U. S. 617, I fail to see how that case can fairly be distinguished from this one. Both *Gonzales* and *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, were written by the same author, who had no difficulty in reconciling them. And they were decided before Congress reentered the labor relations field with the Landrum-Griffin Act of 1959. 73 Stat. 519. Yet, the Court points to no indication that Congress thought *Gonzales* had incorrectly interpreted the balance it had struck between state and federal jurisdiction over these matters.

The distinction the Court draws between this case and *Gonzales*—that in *Gonzales* the lawsuit focused on purely

internal union matters—is not one that a court can intelligently apply in the myriad of cases in the field. This lawsuit started with a quarrel between respondent and his union, concerning the scope of membership rights in the union, as did *Gonzales;* and it is with those rights that this litigation is concerned, as was *Gonzales.* And, as here, it was conceded in *Gonzales* that the conduct complained of might well amount to an unfair labor practice within the Labor Board's jurisdiction. Because of these similarities, and because the Court is clearly right in saying "[i]t is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction," I am able to find no support for the Court's distinction of *Gonzales* in the fact that it was primarily an "equitable" case where damages were allowed only to "fill out" the union member's remedy. Cf. Federal Rules of Civil Procedure, Rules 1, 2, and 54 (c).

*San Diego Building Trades Council* v. *Garmon, supra,* involved a controversy between union and employer in the classical case for National Labor Board jurisdiction. Suits for damages by individual employees against the union or the employer fall in the category of *Moore* v. *Illinois Central R. Co.,* 312 U. S. 630. As a matter of policy, there is much to be said for allowing the individual employee recourse to conventional litigation in his hometown tribunal for redress of grievances. Washington, D. C., and its administrative agencies—and even regional offices—are often distant and remote and expensive to reach. Under today's holding the member who has a real dispute with his union may go without a remedy.*

---

*It is by no means clear that the General Counsel, who by § 3 (d) has "final authority" to investigate charges and to issue complaints, can be made to file a charge on behalf of this individual claimant. See *Mourihan* v. *Labor Board,* 91 U. S. App. D. C. 316, 201 F. 2d 187; *Dunn* v. *Retail Clerks,* 299 F. 2d 873; 307 F. 2d 285.

See, *e. g., San Diego Building Trades Council* v. *Garmon, supra; Guss* v. *Utah Labor Board,* 353 U. S. 1. When the basic dispute is between a union and an employer, any *hiatus* that might exist in the jurisdictional balance that has been struck can be filled by resort to economic power. But when the union member has a dispute with his union, he has no power on which to rely. If *Gonzales*—written in the spirit of *Moore*—is to survive, this judgment should be affirmed.