Stanley B. STOUT et al., Plaintiffs,

v.

CONSTRUCTION AND GENERAL LA-
BORERS DISTRICT COUNCIL OF
CHICAGO AND VICINITY et al., De-
fendants.

No. 63 C 494.

United States District Court
N. D. Illinois, E. D.

Dec. 31, 1963.

Antonio M. Gassaway, E. A. Hunter, Jr., and Louis B. Christopher, Chicago, Ill., for plaintiffs.

Samuel H. Shapiro and Alfred Kamin, Chicago, Ill., for defendants.

DECKER, District Judge.

This case arises on a motion to dismiss the amended complaint. The amended complaint is in two counts. Count I alleges jurisdiction under the Taft-Hartley Act (29 U.S.C. § 141, et seq.) and 28 U.S.C. § 1331. The plaintiffs are all Negro members of certain locals of the International Hod Carriers Union. It is not alleged in what way the Construction and General Laborers District Council is related to either the International Hod Carriers Union or its locals. However, the four plaintiffs allege that they are bringing this suit in their own behalf and on behalf of all other Negro members of the local unions similarly situated. Officers of the various local unions, the International Union and the District Council are also sued in their individual and representative capacities.

It is alleged that the labor unions are the exclusive bargaining agents of units in which the plaintiffs work, having been so designated by Section 9 of the Taft-Hartley Act (29 U.S.C. § 159), and that as such, the unions have an obligation to represent all employees within the bargaining units fairly, without discrimination because of race. It is alleged that it is the duty of the District Council "to exercise general supervision over the Local Unions named as defendants herein and their officers."

Prior to June, 1958, all of the labor union defendants operated what are known as "hiring halls" by which the plaintiffs were assigned work for employers by the unions. Since June, 1958, the "hiring halls" have been discontinued, and the plaintiffs now report directly to employers with whom the labor unions hold contracts for work. However, the employers still require the plaintiffs to present either "referral slips" from the unions or, at the very least, telephone calls from the unions before they will employ the plaintiffs.

The plaintiffs allege that in issuing "referral slips" and when advising members of job opportunities with employers by means of telephone, the defendants have discriminated against the plaintiffs solely because of their race. All of the individual defendant union officers are alleged to be white. Plaintiffs allege that they have no adequate remedy at law and seek injunctive relief against all of the defendants. Plaintiffs allege that they have exhausted all of the remedies available to them within the local unions, the District Council and the International Union; and that without injunctive relief, they will continue to lose large amounts of money in the form of wages and earnings, the exact sum of which can only be determined by the hearing of evidence.

In addition to injunctive relief, each plaintiff seeks $250,000. compensatory and punitive damages. (It is not clear if each of the four plaintiffs bringing this suit only seeks the $250,000. or if each of these plaintiffs is seeking $250,000. both for each of themselves and for each of the numerous other Negro la-

borers in the class in whose behalf they bring the suit.)

Count II alleges jurisdiction in the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 411 and 412) and also 28 U.S.C. § 1331. Plaintiffs specifically reallege and incorporate by reference paragraphs 3, 5 and 6 through 16, inclusive, of Count I. The only distinctive feature of Count II is that Section 101 of the L.M.R.D.A. of 1959 (29 U.S.C. § 411) gives each member of a labor organization equal rights and privileges to nominate candidates, to vote in labor union elections, to attend membership meetings and to participate in the business of such meetings; and also each member of a labor union is given the right to meet and assemble freely with other members and to express views at such meetings on the election of candidates for office in labor unions.

Further, Section 102 of the L.M.R.D.A. of 1959 (29 U.S.C. § 412) says specifically:

"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

It is alleged that the plaintiffs have consistently protested the alleged racial discrimination set out in Count I and have attempted without success to nominate candidates at meetings of the labor unions in question who were "members of the class represented by the named plaintiffs" (presumably Negro candidates for office in the labor unions). The plaintiffs allege that while the racial discrimination that is alleged in Count I was going on they were not deprived of *all* work opportunities but were deprived

of their "equitable share of work." However, since the plaintiffs have protested the practice of racial discrimination at labor union meetings and have attempted to nominate candidates for office, the plaintiffs allege that "job opportunities for the named plaintiffs have been substantially curtailed and in some instances completely abrogated, for no other reason but for their attempt to exercise their rights pursuant to law and as members in good standing of the labor organization defendants." The plaintiffs seek the same relief sought under Count I.

*Motion to Dismiss*

The defendants argue that the Court lacks jurisdiction over the subject matter in the first count in that the conduct of the labor unions complained of amounts to unfair labor practices in violation of Sections 8(b)(1) and 8(b)(2) of the Taft-Hartley Act, 29 U.S.C. § 158, in that primary and exclusive jurisdiction over such unfair labor practices is vested in the National Labor Relations Board pursuant to 29 U.S.C. § 160. Further, as regards to Count II of the amended complaint, the defendants make the same argument that violations of the L.M.R.D.A. of 1959 are also within the exclusive jurisdiction of the National Labor Relations Board, and that therefore this Court lacks jurisdiction over the subject matter.

Finally, the defendants argue in effect that the plaintiffs have failed to state claims upon which relief can be granted in either count.

*Count I*

The sole substantive question for the Court is whether the acts of the labor unions alleged amount to violations of the National Labor Relations Act, as amended, and amount to unfair labor practices as defined in that Act.

 Actually, this Court does not have to determine whether this conduct violates the Act, because technically this Court is without jurisdiction to do so. Rather the test is whether the conduct of the labor unions alleged is "arguably

subject" to the National Labor Relations Act. It is clear that the exclusive jurisdiction for determination as to whether or not such conduct is violative of the Act is in the National Labor Relations Board. See San Diego Bldg. Trades Council, Millmen's Union v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Supreme Court has consistently held since the Garmon case that Federal Courts of Appeal only have jurisdiction over unfair labor practices when an appeal is taken from a decision of the N.L.R.B. or the N.L.R.B. petitions to enforce one of its orders in regard to unfair labor practices; and that the Federal District Courts only have jurisdiction over unfair labor practices when the N.L.R.B. petitions to enjoin conduct which it alleges is an unfair labor practice. Otherwise, the jurisdiction over unfair labor practices is primarily and exclusively vested in the N.L.R.B., and the Federal Courts, including the Supreme Court of the United States, are prohibited from interfering with the National Labor Relations Board's congressionally granted power to exercise its administrative expertise in determining whether unfair labor practices have been committed.

The plaintiffs argue that in several cases decided under the Railway Labor Act, the Supreme Court has held that a labor union is prohibited from racial discrimination among its members, and that Federal Courts have jurisdiction to enjoin such activity. See Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood of Local Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Further, in the case of Williams et al. v. Yellow Cab Co., 200 F.2d 302, the Court of Appeals of the Third Circuit stated that "It is clear that the duty thus imposed upon a statutory collective bargaining representative by the Railway Labor Act is likewise imposed by the National Labor Relations Act upon representatives exercising similar power by virtue of that act." (Id. at p. 304.) The Court went on in that case to hold that the Federal Court lacked jurisdiction to enjoin racial discrimination since the union members there had become members voluntarily and not under compulsion or Federal statute. However, in Syres v. Oil Workers International Union, 223 F.2d 739, the Fifth Circuit, which relied upon the Williams case to dismiss a suit for injunction of a union from racially discriminating among its members for lack of jurisdiction, was reversed in a *per curiam* decision without opinion by the Supreme Court of the United States, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785. On the basis of the Supreme Court's reversal of the Syres case, the plaintiffs really rest their entire case.

While it is true that the Supreme Court has not since ruled on the question as to whether or not Federal District Courts have jurisdiction to enjoin racial discrimination by unions which are regulated by the N.L.R.B., and while it seems that standing alone that decision would indicate that Federal Courts do have such jurisdiction, it seems to me that since the Garmon case was decided subsequent to the Syres decision, and that since the policy of the Supreme Court is now to vest primary and exclusive jurisdiction in the N.L.R.B. whenever conduct complained of is arguably subject to the National Labor Relations Act, as amended, that the Syres precedent ought to be disregarded and that Count I should be dismissed for lack of jurisdiction over the subject matter.

Recently the National Labor Relations Board has apparently moved toward a policy of finding that racial discrimination by a union violates Sections 8(b)(1) and 8(b)(2) of the N.L.R.A. (29 U.S.C. § 158(b)(1) and (2)). Hughes Tool Co., 52 L.R.R.M. 247, is a National Labor Relations Board case in which a trial examiner held on February 26, 1963, that racial discrimination by a union violates those sections of the Act. The Board still has not ruled as to wheth-

er or not it will adopt the findings of the trial examiner.

However, in the related matter of determining whether union or employer conduct in representative elections has been fairly conducted, the Board has several times held that appeals to racial bias will void an election. See Pioneer Bus Co., 140 N.L.R.B. #18; Sewell Mfg. Co., 140 N.L.R.B. #24; Local Union No. 12, United Rubber Workers, Gadsden, Alabama, 52 L.R.R.M. 289; Boyce Machinery Corp., 141 N.L.R.B. #76.

■ I would say that on the basis of the Garmon case and the trial examiner's finding in the Hughes Tool Co. case, the defendants' argument, that primary and exclusive jurisdiction over the allegations of Count I is vested in the N.L.R.B., is correct, and therefore Count I should be dismissed for lack of jurisdiction over the subject matter.

*Count II*

Count II is somewhat different for the reason that the L.M.R.D.A. of 1959 specifically grants jurisdiction to the United States District Courts in suits by any person whose rights under Section 101 of that Act (29 U.S.C. § 411) have been violated. The defendants argue that the legislative history of the L.M.R.D.A. demonstrates that Congress expressly refused to incorporate a prohibition of racial discrimination by labor unions into that statute.[1] I think that this may be true, but that does not go to the substance of what the plaintiffs actually alleged in Count II. Plaintiffs' allegations are that when they protested the alleged racial discrimination at labor union meetings, and when they nominated candidates for union office without any success, they incurred the wrath of the union leadership (among whom the various defendants in this case are included). As a result of their attempts to exercise their rights of free speech, free assembly, to nominate candidates, to vote on election of officers of the defendant unions and to participate in union business by voting at such meetings, the union leadership curtailed their job opportunities by discriminatorily withholding referral slips or telephone referrals from these plaintiffs when they went directly to employers to seek employment as hod carriers.

The plaintiffs are not simply alleging that they were being racially discriminated against; they are alleging that because of their exercise of rights protected by Section 101 of the L.M.R.D.A. (29 U.S.C. § 411), they were racially discriminated against. They argue in effect that the defendant labor unions are prohibited by the L.M.R.D.A. from doing indirectly what they could not do directly. If it would be a violation of the L.M.R.D.A., the plaintiffs argue, for the defendant unions and union officers to prevent the plaintiffs from exercising their rights of free speech, assembly and their rights to vote and nominate candidates, it is equally a violation of the L.M.R.D.A. for the defendant unions and their officers to penalize the plaintiffs for the exercise of such rights by withholding job opportunities from them.

Plaintiffs call attention to an opinion by Chief Judge Campbell of this Court in Todd v. Joint Apprenticeship Committee, etc., D.C., 223 F.Supp. 12. The opinion is taken from a transcript of the proceedings before Judge Campbell on October 16, 1963. There the suit was by three individual Negroes who claimed that the denial by two union bodies, and the complicity in that denial by two agencies of the Federal Government and one agency of the State of Illinois, of the plaintiffs' rights to become apprentices in a union training program constituted a deprivation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution.

After finding that the union defendants did invidiously discriminate against Negroes and against those particular Negro plaintiffs, and that the government bodies in question did, at the very least,

1. See Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Vol. 2, pp. 1648–1651.

passively cooperate with the unions in their discrimination, Judge Campbell disposed of certain arguments of the defendants. One of those arguments was that primary and exclusive jurisdiction of the subject matter of the complaint was in the National Labor Relations Board and that the field had been pre-empted by Sections 7 and 8 of the National Labor Relations Act (29 U.S.C. §§ 157, 158). Judge Campbell found that these two sections of the Act referred to unfair labor practices by a union "against employees" only:

> "The statute in no way proscribes the discriminatory conduct alleged and proved in this case. For that matter I might gratuitously comment that if, as suggested by the Union's attorney, this action were initiated before the National Labor Relations Board, the same Union and possibly through the same attorney would undoubtedly be the first to defend on the ground that the complainants were not employees or members of the Union and as such were entitled to no rights under the Act, which it cites here. It is obvious to me that a Union's responsibility under this Act does not extend beyond the membership of its own Union and the non-Union employees who are members of the same bargaining unit. The statute expressly exempts from its provisions, even assuming arguendo its applicability to the non-employee plaintiffs in the instant case, the right of a Union to determine its membership. It is that which is specifically so exempted from that act which is the issue here." (Ibid. at pp. 920–921 of the transcript.)

It is clear here in the case at bar that the Todd case is inapposite. There is no doubt that the plaintiffs in our case are union members and employees within the definition of the National Labor Relations Act. These plaintiffs are claiming, not that they have been denied the right to union membership, as was the case in Todd, but rather, that as union members, they are being discriminated against, because of their race, in their attempts to find employment.

■ While the plaintiffs' attempts to bring this action under Title I of the L.M.R.D.A. of 1959 (29 U.S.C. § 401 et seq.) are quite subtle, I think that the clear intent of the statute was to exclude suits such as this from the United States District Courts and to leave the affected employees and union members their exclusive remedies before the National Labor Relations Board.

The recent case of Green v. Local 705, et al., 220 F.Supp. 505 (D.C.E.D.Mich. 1963), involved a suit quite similar to the case at bar. There the plaintiffs sought relief under Title I of the L.M.R.D.A. (29 U.S.C. § 401 et seq.), alleging, among other things, that the union, of which they were members, engaged in racial discrimination in job assignments. The defendants made a motion to dismiss for lack of jurisdiction of the subject matter, which Judge Talbot Smith granted. (The other allegations of the union's misconduct concerned violence, extortion and intimidation.)

■ Judge Talbot Smith, in a most persuasive opinion, stated that the purpose of Title I, the so-called "Bill of Rights" (29 U.S.C. § 411 et seq.), was to preserve internal union democracy against the assaults of autocratic union management. The Act seeks to guarantee to all union members equal rights and privileges in nominating, and voting upon, union officers. It also seeks to guarantee freedom of speech and assembly as well as freedom from the arbitrary increases in dues and assessments. It also provides that disciplinary procedures must afford union members a fair hearing. Finally, the union member's right to sue in the event that the union violates any of his rights is protected. Judge Smith stated (at 220 F.Supp. 506–507):

> "It is true, of course, in a broad sense, that if a union member is assaulted and as a result thereof

confined to a hospital bed, or, indeed, kidnapped and spirited from the jurisdiction, he may be prevented from voting in the next union election or regarded as 'disciplined'. But so interpreted Title I swallows too much. It must be interpreted in the light of its legislative history, to insure internal union democracy, and not so broadly as to usurp the appropriate criminal jurisdiction or applicable statutory prohibitions against illegal or unfair labor practices.

"So far as favored job referral is concerned, it seems clear from the terms of the National Labor Relations Act, as well as the reported cases construing it, that plaintiffs' allegations that some employees are being favored and others disfavored in the referral of jobs for extra waiters involve a charge for exclusive N.L.R.B. jurisdiction, either certainly, or, at least (which is sufficient), 'arguably.' The recent case of Local 100, United Ass'n. of Journeymen and Apprentices v. Borden (1963), 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638, was just such a case, the court holding (with respect to a question involving job referral from a union hiring hall) that the matter was within the doctrine of San Deigo Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 [43 LRRM 2838], namely, that state courts must defer to *'the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject* to the protection of § 7 or the prohibitions of § 8 of the National Labor Relations Act'. 373 U.S. 690, 693, 83 S.Ct. 1423, 1425 [10 L.Ed. 2d 638, 53 LRRM 2322], (Emphasis added, footnote omitted.)

"In short, the Landrum-Griffin Act, under which this bill is brought, 'does not supplant remedies available under the law. Where a

remedy does exist through other Congressional legislation specially geared for such purpose, and no indication is evident in the Act pursued which provides the remedy sought, nor any expressed or manifest intent on the part of the framers of said Act evident in any of their pronouncements, I have no basis to read into the Act this jurisdiction. This view is buttressed by Section 103 of the Act which provides, inter alia, as follows:

" ' "Nothing contained in this subchapter (Title I of the Act) shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and by-laws of any labor organization." (29 U.S. C.A. § 413.)'

"This is not to say that such criminal and illegal acts as are here alleged, if proved, are without redress in the appropriate forum. Here the precise issue is just that, the forum, and it is the holding of this court that such forum is not that of the district court of the United States under the grant of jurisdiction found in Title I of the Landrum-Griffin Act. In short, as my brother Freeman put it, Title I is not a 'catch all' into which disgruntled members may sweep all manner of miscellaneous charges. It is a specific section for the enforcement of specific rights, the violation of which is not even here reasonably or properly (or, in my judgment, intended to be) alleged." (Footnotes omitted.)

In the case at bar there is no allegation that the plaintiffs were prevented from nominating candidates at elections or were prevented from voting upon candidates at elections. On the contrary, the complaint merely alleges that, having nominated their own candidates and having voted upon them, the plaintiffs were "unsuccessful."

**680**

This is not enough to bring the case within the coverage of Title I of the L.M.R.D.A. (29 U.S.C. §§ 411–415). The gravamen of the plaintiffs' charges here is that their union is racially discriminating against them in job assignments. This alleged union conduct, no matter how reprehensible and contrary to the law, does not come within the coverage of Title I of the L.M.R.D.A. The plaintiffs' remedy is before the National Labor Relations Board, the forum which Congress has provided with exclusive jurisdiction to decide unfair labor practices.

Therefore, the motion of the defendants to dismiss for lack of jurisdiction of the subject matter is granted.