**INTERNATIONAL UNION OF OPERATING ENGINEERS et al., Appellants,**

v.

**James M. CASIDA et al., Appellees.**

**No. 7285.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 3, 1964.

Rehearing Denied March 30, 1964.

Mullinax, Wells, Morris & Mauzy, Dallas, L. N. D. Wells, Jr., Albert Levy and David R. Richards, Dallas, of counsel; Woll, Mayer & St. Antoine, Washington, D. C., Sam Houston Clinton, Jr., and Arthur Mitchell, Austin, for appellants.

Albert Smith, Lubbock, W. L. McConnell, Amarillo, H. M. Hood and Jack Hood, Borger, for 28 appellees.

C. J. Roberts and C. Rex Boyd, Amarillo, for Phillips Petroleum Co.

DENTON, Chief Justice.

This suit for damages was brought by James M. Casida and 27 other former employees of Phillips Petroleum Company against the International Union of Operating Engineers, Local Union No. 351, an affiliate of that International Union, and certain union officials. Appellees, plaintiffs below, sought damages alleged to have been sustained by each of them by reason of being discharged by Phillips Petroleum Company for carrying out certain orders of named union officials. The two union defendants impleaded Phillips Petroleum Company as a third party defendant. Prior to the submission of the case to the jury, plaintiffs took nonsuits as to the union officials. Phillips' motion for summary judgment also was granted prior to the trial of the case on its merits. The jury awarded damages to the individual plaintiffs in varying amounts ranging from $24,158.40 to $78,891.20 for an aggregate sum of $1,186,568.40. The trial court rendered judgment jointly against the unions in accordance with the jury verdict.

All 28 plaintiffs were employed by Phillips Petroleum Company and were members in good standing of Local 351 which was chartered by and affiliated with the International Union. Local 351 had been certified as the bargaining representative with Phillips by the National Labor Relations Board. It is undisputed that the activities here involved affected interstate commerce. The union contract with Phillips was to have expired May 1, 1958, but by written agreement it was extended two weeks to May 15 in order that negotiations could continue. Either party could terminate this supplemental agreement by giving twenty-four hours written notice. Further negotiations failed to produce an agreement and the union voted to strike. The strike was set for May 14, 1958, at 9:00 o'clock p. m. Notice of the union's intention to strike was timely given to the company. The 28 plaintiffs together with 5 other union members, were employed by Phillips in the gasoline department, and in such capacity they were operators in several of the company's gasoline plants. When the strike began these 33 operators began "shutting down" the plants contrary to orders of Phillips' supervisors. For such action these 33 members were discharged by the company for insubordination. 28 of the 33 discharged employees brought this suit for damages.

The crux of appellees' cause of action is that their carrying out of certain orders

or instructions of certain alleged union officials to shut down the gasoline plants caused their discharge. Plaintiffs alleged union attorney Clinton advised union members prior to the strike, "When a strike is called, you are required by law to shut the plants down. The company can fire you, but they can't make it stick, you will get your job back or one equal to its pay value." These same orders were also alleged to have been given the union members by L. V. McCarthy, the local union's business representative; by E. E. Looney, the local's vice president; by C. V. Holley, a union member and the local's chairman of the gasoline department; and by Joe W. Rigdon, the International Union's representative. Plaintiffs' pleadings, evidence, and the jury findings were to the effect these orders or representations were material, false, and relied on by each of the plaintiffs. They further alleged the union breached an implied agreement with the union members to properly represent them and to use at least ordinary care to inform them fairly and accurately concerning negotiations between the union and the company; the proper manner to carry out a strike; duties they owed to the employer in carrying out a strike; and the right of the company to discharge an employee who shuts down a plant contrary to employer's instructions. Plaintiffs alleged "these covenants are inherent in the contractual relationship created when the plaintiffs joined the defendant unions and are implied by law." They further allege "but for the aforesaid orders [by the union officials] these plaintiffs would not have shut the plants down and would not have lost their jobs." The only relief sought by these union members is money damages. Each plaintiff voluntarily took his "withdrawal card" from the union, and they make no request for reinstatement into the union.

■ Appellant unions first challenge the State court's jurisdiction, contending the subject matter of this case is within the exclusive jurisdiction of the National Labor Relations Board. This plea to the jurisdic-tion was overruled by the trial court and has been re-asserted here. The United States Supreme Court held in Local 100 of United Association of Journeymen v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963): "Thus the first inquiry, in any case in which a claim of federal preemption is raised, must be whether the conduct called into question may reasonably be asserted to the subject to Labor Board cognizance." In the same opinion the court uses the phrase "reasonably arguable" in determining whether the conduct complained of comes within the Board's jurisdiction.

In the present case plaintiffs allege and the jury found that the instructions given by the union officials to plaintiffs were relied on by them, and that the carrying out of such instructions was the cause of their discharge by Phillips. Plaintiffs further allege and the jury found the named union officials entered into an unlawful conspiracy and gave the instructions above referred to in order to cause Phillips' plants to be shut down. Plaintiffs contend by brief "The heart of their case lies in the defendant unions' failure to perform common law duties to their members." These alleged common law duties are described as the unions' negligent and otherwise wrongful order to immobilize the plants in the face of clear and definite instructions to the contrary by supervisors of the employer. This is the basis of appellees' contention that the State court has jurisdiction of this present suit. As we understand it, appellees urge that these alleged common law duties owed by the union to its members represent a matter concerning the relationship between the unions and their members, thus taking the activity complained of out of the jurisdiction of the National Labor Relations Board. The assertion by brief that appellees "are not charging defendants with having coerced them into participating in the strike, the picketting, *or any other activity covered by the National Labor Relations Act.*" (Emphasis added) is not consistent or com-

patible with the pleadings, evidence and jury finding. Admittedly, all plaintiffs took part in the strike vote, voluntarily struck and participated in the picketting which took place during the strike. The question of whether or not there was coercion by the union relative to "any other activity" must be decided in disposing of this jurisdictional question.

Relevant sections of National Labor Relations Act,[1] commonly referred to as the Taft-Hartley Act, provides:

Sec. 157 [Sec. 7, 49 Stat. 452]

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

Sec. 158 (Sec. 8, 49 Stat. 452]

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules which respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances."

We have concluded the conduct alleged to have been committed by the union offi-

cials arguably comes within the protection afforded by Section 7 of the Act. Two recent decisions of the United States Supreme Court in Association of Journeymen v. Borden, supra, and Local No. 207, etc., Iron Workers Union v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646, are controlling authorities on this question of preemption. See also San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. Plaintiffs rely on International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018, among other cases. But the court in Borden distinguished Gonzales on the ground that decision turned on the court's conclusion that the suit was focused "on purely internal union matters, i. e., on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights." In the Borden case, Borden, a member of a Louisiana local of the plumbers' union, attempted to secure a job with a construction company in Dallas on a particular construction project. The company hired employees through union referrals. Borden was unable to obtain such a referral from the business agent of the defendant Dallas local even though Borden had clearance between the two locals and the company foreman had asked that Borden be sent to the job. Borden brought suit against the union in a Dallas State court seeking damages under the State law for the union's refusal to refer him to the company. The union challenged the State court's jurisdiction as was done in the present case. The United States Supreme Court held the State court had no jurisdiction since it was arguable that the union's conduct either violated or was protected by the National Labor Relations Act. In so holding, the court used the following language: "The suit involved here was focused principally, if not entirely, on the union's actions with respect to Borden's efforts to obtain employment. No

1. 49 Stat. 452, as amended, 29 U.S.C. §§ 157, 158.

specific equitable relief was sought directed to Borden's status in the union, and thus there was no state remedy to 'fill out' by permitting the award of consequential damages. The 'crux' of the action (Gonzales, 356 U.S., at 618, 78 S.Ct., at 924 [2 L.Ed.2d 1018]) concerned Borden's employment relations and involved conduct arguably subject to the Board's jurisdiction." The court also rejected Borden's contention that the suit for damages was one based on contract and tort, thus conferring the State court jurisdiction. In disposing of this contention, the court said: "It is not the label affixed to the cause of action under state law that controls the determination of the relationship between state and federal jurisdiction. Rather, as stated in Garmon, supra, 359 U.S. at 246, 79 S.Ct. at 780 [3 L.Ed.2d 775], '[o]ur concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered'. (Emphasis added.)"

Thus, in the present case the area of conduct complained of is the giving of the order to shut down the plants to the union members which resulted in their being discharged. Plaintiffs' loss of employment with Phillips and their inability to obtain and retain similar employment is the crux of their cause of action. No equitable relief such as restoration of union membership rights is being sought. Section 7 of the Act protects employees in their engaging in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(b) (1) makes it an unfair labor practice for a labor organization or its agents "to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title." When the 28 union members shut down the Phillips gasoline plants on orders of the union officials, they were engaging in "concerted activities".

Under Section 7 these plaintiffs had "the right to refrain from any or all of such activities". It is the alleged coercion by union officials that dictated the actions of the plaintiffs contrary to their specific right to refrain from such activity which forms the basis of plaintiffs' complaint.

In the Perko case which also involved an alleged conspiracy to deprive the union member of the right to continue to work, the Supreme Court said: "As in Borden, the crux of the action here concerned alleged interference with the plaintiff's existing or prospective employment relations and was not directed to internal union matters. * * * Thus there was no permissible state remedy to which the award of consequential damages for loss of earnings might be subordinated." This and other holdings cited above are controlling under the pleadings, evidence, and jury findings in the instant case.

In determining this jurisdictional question we are not called upon, and we make no finding of the substantive question, that is, whether either the local or International Union was guilty of a violation of the Act. We do conclude, and so hold, that the subject matter of this case "arguably" comes within the jurisdiction of the National Labor Relations Board to deal with unfair labor practices. It therefore follows the State court is without jurisdiction to hear and determine the merits of this case and must defer jurisdiction to the Board.

In view of our conclusion that the State court is without jurisdiction, it becomes unnecessary to consider and pass on the remaining points of error presented in this voluminous record.

The judgment of the trial court is accordingly reversed and rendered.

Reversed and rendered.