Joseph M. Conroy, J.
Defendants move to dismiss plaintiff’s amended complaint pursuant to CPLR 3211 (subd. [a], par. 2) on the ground that “ the court has no jurisdiction of the subject matter of the cause action ’ ’.
Plaintiff operates a business involving the purchasing, preparation, packaging and distribution and retail sale of food products and the operation and maintenance of a food commissary, trucks and snack bars at fixed locations in the metropolitan area. Plaintiff alleges that on or about September 3, 1965 the defendant union, claiming to represent more than a majority of plaintiff’s service employees, sought recognition as a collective bargaining agent for said employees and that also on that day said defendant petitioned the regional office of the National Labor Relations Board for an election among plaintiff’s production and service employees and that such an election was scheduled. Plaintiff alleges that the contents of the petition were false and said petition was made in an effort “ at harassing and intimidating plaintiff and to coerce and compel him into recognizing the defendant Union as the collective bargaining agent. ’ ’
For the first cause of action, plaintiff seeks $1,000 damages, that sum representing the fee paid by it for representation before the National Labor Relations Board. For its second cause of action, plaintiff alleges that on October 11, 1965, defendants:
“ a) Caused picketing to be commenced at plaintiff’s business offices, garage, and commissary, at 150-20 14th Avenue, White stone, Queens;
“ b) Caused the persons engaged in such picketing to carry and bear .signs and placards containing the false, untruthful and misleading legend ‘ membebs oe local union 84, intebnational MOLDEES AND ALLIED WOBKEHS UNION, AEL-CIO, ON STRIKE AGAINST HELDMAN CATEBING ’;
*446 “ c) Caused picketing to be commenced along various and diverse truck routes and stops thereon of the plaintiff where his products are sold, and caused the persons engaged in such picketing to carry and bear placards containing the legend aforesaid;
“ d) Telephoned the management of plants and factories where plaintiff maintains snack bars under concessions granted to him by the management, informed such management that plaintiff’s employees were on strike, and threatened to picket their said plants and factories unless such management caused plaintiff’s snack bars to be removed from their premises and plaintiff’s operations thereat to be discontinued.”
For its third cause of action, plaintiff seeks punitive damages for the alleged unlawful acts stated for its second cause of action.
The court will -first consider the question of jurisdiction over the second and third causes of action. In support of their motion to dismiss these causes of action, defendants contend that since the acts stated therein constituted unfair labor practices under section 8 of the National Labor Relations Act (U. S. Code, tit. 29, § 158) jurisdiction thereof is solely in the hands of the National Labor Relations Board and the State courts have been preempted from exercising jurisdiction. In opposition, plaintiff argues that jurisdiction was granted to the State courts by section 303 of the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 187, subd. [b]).
The question presented on these causes of action is whether the courts of this State have been pre-empted by the National Labor Relations Act. The resolution of this question entails the accommodation of the Federal interest in uniform regulation of labor relations with the State interest in these disputes. The guiding principles were laid down in San Diego Unions v. Garmon (359 U. S. 236, 242-243, 244), where the Supreme Court reversed the judgment of the California Supreme Court awarding an employer tort damages for peaceful picketing designed to coerce him into signing a union shop agreement. In that case the court quoted the following language from a previous decision (Garner v. Teamsters Union, 346 U. S. 485, 490-491): “ Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed *447 procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. * * * A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.”
The court went on to state:
“When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.” (See, also, Dooley v. Anton, 8 N Y 2d 91.) Therefore, the court concluded that when an activity is “ arguably ” subject to section 7 or section 8 of the act, the States and the Federal courts must defer to the National Labor Relations Board so that the dangers of State interference with National policy may be averted. Recently in Linn v. Plant Guard WorJcers (383 U. S. 53, 59-60) that court, citing Plumbers’ Union v. Borden (373 U. S. 690), reaffirmed these principles, reiterating the following language from Borden (supra): “ [I]n the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of § 7 or the prohibitions of § 8 of the National Labor Relations Act. This relinquishment of state jurisdiction * * * is essential if the danger of state interference with national policy is to be averted,’ * * * and is as necessary in a suit for damages as in a suit seeking equitable relief. Thus the first inquiry, in any cases in which a claim of federal preemption is raised, must be whether the conduct called into question may reasonably be asserted to be subject to Labor Board cognizance. ’’
*448 Thus, generally where an activity comes arguably within the ambit of the defined unfair labor practices, the State courts have no jurisdiction. Yet Congress has left an area in which the State courts are specifically vested with jurisdiction together with the National Labor Relations Board over one type of unfair labor practice. Subdivision (a) of section 303 of the Labor-Management Relations Act (U. S. Code, tit. 29, § 187, subd. [a]) provides: “ It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.” The unfair labor practice defined in section 158 (subd. [b], par. [4] is for a labor organization ‘ ‘ to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise, handle or work on any goods * * * or to perform any services; or * * * to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where * * * an object therefor is * * * (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person ”. Subdivision (b) of section 303 provides that suit may be brought in any District Court of the United States or “ in any other court having jurisdiction of the parties ” by a person injured in his business or property through the operation of the specific unfair labor practice defined above — in other words, for victims of secondary boycotts.
The court must apply these general principles to the case at bar. In its second cause of action, plaintiff has alleged the unfair labor practice defined in section 8 of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [b], par. [7]), i. e., “ to picket or cause to be picketed, or threaten to picket * * * where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization” under certain circumstances. The National Labor Relations Board has exclusive jurisdiction over this unfair labor practice and the State courts have been pre-empted from jurisdiction. Intermingled with the pleaded facts of the picketing, however, are the allegations of a secondary boycott. Under the allegations of a secondary boycott, this court would have jurisdiction pursuant to section 303. (See Teamsters Union v. Morton, 377 U. S. 252.) Under the circumstances, this court will not take it *449 upon itself to fractionalize the facts pleaded in the second cause of action, and feels that the best course is to dismiss the second cause of action, with leave to plaintiff to replead as a separate cause of action the facts constituting a violation of section 303 over which this court has jurisdiction. For the same reasons, the third cause of action, in which plaintiff seeks punitive damages, also is dismissed with leave to replead.
Plaintiff’s first cause of action is also dismissed. Belief from the alleged fraud before the National Labor Belations Board should be obtained from the board and not from this court.
Accordingly, the motion to dismiss the first cause of action is granted as is the motion to dismiss the second and third causes of action, but as to these the motion is granted with leave to replead.