[Cite as *Anzevino v. DePasquale*, 2012-Ohio-1507.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RANDAL ANZEVINO, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | CASE NO.  11 MA 111 |
| | ) | |
| -VS- | ) | |
| | ) | O P I N I O N |
| RAYMOND DePASQUALE, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 08CV3802.


JUDGMENT:                                      Affirmed in part; Reversed and Remanded
in part.



JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


Dated:  March 30, 2012

[Cite as *Anzevino v. DePasquale*, 2012-Ohio-1507.]

APPEARANCES:

For Plaintiff-Appellant:

Attorney A. Clifford Thornton, Jr.
23230 Chagrin Blvd. #605
Beechwood, Ohio  44122


For Defendants-Appellees:

Attorney Samuel Amendolara
1032 Boardman-Canfield Road
Youngstown, Ohio  44512
(For Raymond DePasquale)

Attorney Robert Moore
114 Neff Drive
Canfield, Ohio  44406-1345
(For Teamsters Local 377)

Attorney Neil Schor
26 Market Street, Suite 1200
P.O. Box 6077
Youngstown, Ohio  44501-6077
(For Christopher Colello)

VUKOVICH, J.

{¶1} Plaintiff-appellant Randal Anzevino appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees. The issue is whether the trial court properly dismissed appellant's claims on the grounds that they are preempted by the National Labor Relations Act so that the National Labor Relations Board is the only proper forum for those claims.

{¶2} For the following reasons, the judgment of the trial court is affirmed in part and reversed and remanded in part. Contrary to the trial court's decision, United States Supreme Court law allows appellant's intentional defamation claim to remain in state court, and appellant's tortious interference claim can also remain in state court to the extent that it is based upon intentional defamation. The trial court's dismissal of appellant's negligent defamation claim is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶3} Appellant is a truck driver in the Teamsters Union. In September of 2008, he filed a civil complaint in the Mahoning County Common Pleas Court against Raymond DePasqaule, Christopher Colello, the International Brotherhood of Teamsters, and the Teamsters Local 377. The complaint stated as background that in May of 2007, appellant filed charges with the Local against DePasqaule, who was the Local's business agent, alleging that he failed to enforce a collective bargaining agreement on a job and committed fraud in issuing OSHA cards for hazardous material training. The charges were not processed by the Local due to "lack of specificity."

{¶4} In July, he restated his charges against the business agent. In August of 2007, appellant brought charges against Colello, who was the Local's president, for fraud in convincing employers to allow unemployment for failed drug tests, failure to act on the OSHA card issue, failure to police the jurisdiction, and failure to process a prior grievance. The Local forwarded the July and August charges to a higher authority due to a conflict of interest.

**{¶5}** Thereafter, the business agent and the union president copied appellant's personnel file. This act was captured by videocameras that they did not know had been installed in the union hall. The file was mailed to appellant's new employer in September of 2007. Appellant was fired the day the employer received his file in the mail. He then brought more charges with the union.[1]

**{¶6}** In his civil complaint, appellant set forth six counts: tortious interference with a business relationship against the business agent and president as individuals; vicarious liability of the Local for tortious interference; intentional defamation against the individuals; negligent defamation against the individuals; vicarious liability of the Local for defamation; and, negligent supervision by the unions.

**{¶7}** The case was removed to federal court on the grounds that the claims were preempted by the Labor Management Relations Act (LMRA). Thereafter, the federal court found that the sixth count (negligent supervision by the unions) was barred by the statute of limitations in the LMRA. As to the other counts (which are the ones at issue in the case before us), the federal court ruled that they were not preempted by the LMRA as there was no need to interpret the collective bargaining agreement or to invoke a right provided by the agreement in order to adjudicate these claims. Thus, on June 18, 2009, these counts were remanded back to the state trial court.

**{¶8}** In May of 2010, the defendants moved for summary judgment on various grounds. In pertinent part, they argued that the National Labor Relations Act (NLRA) preempts the remaining claims as they deal with conduct prohibited or protected by that act and thus are subject to the primary jurisdiction of the National Labor Relations Board (NLRB). Specifically, they argued that the alleged conduct was covered by the act because it could be considered a violation of the union's duty of fair representation, retaliation for engaging in a protected activity, or mere disclosure of information necessary to an employer. The magistrate denied summary judgment.

---

[1]In February of 2008, the Teamsters General Executive Board found merit to the charge against the business agent and president for copying appellant's file and sending it to his employer, stating that this was improper behavior. They were suspended from the union for this and other charges unrelated to appellant.

**{¶9}** Thereafter, the Local asked the magistrate to reconsider its denial of summary judgment. The Local explained that the LMRA preemption issue decided by the federal court dealt only with whether removal to federal court was appropriate and is distinct from the NLRA preemption issue now raised which deals with NLRB jurisdiction. The Local reiterated its arguments concerning why the conduct complained of falls under the NLRA and thus under the sole jurisdiction of the NLRB. Appellant responded that such preemption only applies in the context of a labor dispute or where there is an unfair labor practice.

**{¶10}** On September 21, 2010, the magistrate granted summary judgment for the defendants. Appellant filed timely objections. On June 15, 2011, the trial court adopted the magistrate's decision and granted summary judgment to the defendants, holding that the claims are preempted by the NLRA since the conduct complained of was arguably prohibited by the act and thus the NLRB is the proper forum before which the claims must be brought. Appellant filed a timely notice of appeal.

*GARMON* PREEMPTION

**{¶11}** The *Garmon* doctrine is one type of preemption found to be necessary to implement federal labor policy by precluding state interference with the NLRB's interpretation and enforcement of the NLRA. *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613, 106 S.Ct. 1395, 89 L.E.2d 616 (1986); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.E.2d 775 (1959). Under *Garmon* preemption, the NLRB has primary jurisdiction over (and thus states cannot regulate or judicially remedy) activity that is protected or arguably protected under §7 of the NLRA or arguably constitutes an unfair labor practice and is thus prohibited under §8 of the NLRA. *Garmon*, 359 U.S. at 244-245. *See also Wisconsin Dept. of Indus. v. Gould Inc.*, 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.E.2d 223 (1986). So, if a remedy can be sought under the NLRA, a separate remedy cannot generally be sought in state or federal court; otherwise conflicts would result. *See Garner v. Teamsters*, 346 U.S. 485, 498-499, 74 S.Ct. 161, 98 L.E. 228 (1953); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748-749, 105 S.Ct. 2380, 85 L.E.2d 728 (1985), fn.26.

{¶12} One exception to the *Garmon* doctrine applies where the activity is merely a peripheral concern of the NLRA or touches interests so deeply rooted in local responsibility that courts cannot infer Congress deprived states of the power to act. *J.A. Croson Co. v. J.A. Guy, Inc.*, 81 Ohio St.3d 346, 355, 691 N.E.2d 655 (1998), citing *Farmer v. United Brotherhood of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 296-297, 97 S.Ct. 1056, 51 L.E.2d 338 (1977) and *Garmon*, 359 U.S. at 243-244. Along these lines, *Garmon* has not been applied to preempt state court actions for intentional inflection of emotional distress, malicious libel, violence, threats of violence, and threats to public order, even if the facts (if true) would also violate Section 8 of the NLRA. *Farmer*, 430 U.S. at 303; *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.E.2d 582 (1966); *Humility of Mary Health Partners v. Sheet Metal Workers' Local Union No. 33*, 7th Dist. No. 09MA91, 2010-Ohio-868, ¶ 11, citing *Garmon*, 359 U.S. at 247.

{¶13} Still, in order to determine whether the activity is arguably protected or prohibited by the NLRA, it is the conduct, not the cause of action that is to be evaluated. *Humility of Mary,* 7th Dist. No. 09MA91 at ¶ 15-17, citing *Amalgamated Assn. of Street, Elec., Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 29 L.E.2d 473 (1971). This is not an easy task and has been termed a "knotty problem." *Amalgamated,* 403 U.S. at 277.

ASSIGNMENT OF ERROR

{¶14} Appellant's sole assignment of error provides:

{¶15} "THE TRIAL COURT ERRED IN FINDING THAT APPELLEES' TORTIOUS CONDUCT ARGUABLY OCCURRED WITHIN THE CONTEXT OF A LABOR DISPUTE AND WAS THUS PREEMPTED BY FEDERAL LAW PURSUANT TO THE NATIONAL LABOR RELATIONS BOARD."

{¶16} Appellant states that the conduct complained of in his complaint is not on the list of protected activities in Section 7. As for Section 8, appellant argues that the sending of the file did not involve a labor dispute, which he believes is a required criteria for an unfair labor practice to exist.

{¶17} The defendants respond that a pre-existing labor dispute is not required for there to be a violation of the NLRA, especially if the act complained of is itself

labor-related. *See* 29 U.S.C. 158. Notably, a main complaint by appellant concerns the union's interference with his existing employment relationship. And, it has been held that "employment relations" is a concern of the NLRB and that this would include an employee's complaint that the union did not refer him to a job. *See Plumbers v. Borden*, 373 U.S. 690, 697, 83 S.Ct. 1423, 10 L.E.2d 638 (1963).

{¶18} The defendants also note that at the time the file was copied and mailed, appellant was not happy with the handling of a claim he wished to pursue against a prior employer for his termination, and he had filed charges against them for their handling of various labor issues. Thus, they urge that appellant was involved in a labor dispute with the two union officials at the time of their conduct. *See* 29 U.S.C. 152(9) (defining labor dispute as including any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee*). In fact, it could be said that the act of union officials of sending a union file to the union member's employer in order to get him fired created a labor dispute itself.

{¶19} Appellant counters that once conduct rises to a certain level, such as violence or threats of violence, the existence of a labor dispute is not the point. In other words, the specific conduct here is actionable without regard to any background dispute. This is essentially an argument concerning the *Garmon* exception, which will be addressed below.

{¶20} Another argument the defendants set forth is that they arguably violated a duty of fair representation which was owed to appellant under the NLRA and which is equivalent to an unfair labor practice. The defendants rely upon *Vaca*, where the employee sued the union for breach of fair representation by failing to arbitrate a grievance after he was discharged from employment. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.E.2d 842 (1967). The Court acknowledged that the NLRB has held that the duty of fair representation is implicit in Section 9 of the NLRA and thus the violation of the duty can be an unfair labor practice under Section 8. *Id.* at 176-177. *See also Breininger v. Sheet Metal Workers Internatl. Assn. Local Union No. 6,*

493 U.S. 67, 86-87, 110 S.Ct. 424, 107 L.E.2d 388 (1989). The *Vaca* Court held that a breach of the statutory duty of fair representation occurs when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 190.

**{¶21}** However, the *Vaca* Court allowed the cause of action to proceed in state court, noting that the duty of fair representation is a judicially-created doctrine. The Court had cited the various cases that have fallen under the *Garmon* exception outlined above. *See id.* at 180, citing *Linn*, 383 U.S. 53 (libel) and *Internatl. Union, United Auto. Workers of America v. Russ*ell, 356 U.S. 634, 78 S.Ct. 932, 2 L.E.2d 1030 (1958) (violence). The Court later concluded that the action could proceed (under a section of the LMRA) notwithstanding that the *Garmon* doctrine would preempt the action as an unfair labor practice under the NLRA. *Id.* at 183-184. *See also Breininger*, 493 U.S. at 76 (that a breach of the duty of fair representation might also be an unfair labor practice is thus not enough to deprive a court of jurisdiction over the fair representation claim).

**{¶22}** Thus, *Vaca* does not support the defendants' position here. Rather, it tends to support a claim that the NLRA does not preempt all suits based upon fair representation merely because such can be considered an unfair labor practice by the NLRB. Regardless, appellant's claims do not rely on some judicially-created duty of fair representation. Thus, we continue to address his claims.

**{¶23}** The defendants then cite Section 8(b), which prohibits (as an unfair labor practice) a union or its agent from restraining or coercing employees in the exercise of their rights under Section 7. 29 U.S.C. 158(b). The portion of Section 7 on which they rely states that the employee has the right to engage in concerted activity for the purpose of mutual aid or protection. 29 U.S.C. 157. The defendants conclude that their act of sending the file to the employer could arguably be considered a retaliatory act to coerce appellant from exercising his right under Section 7 to criticize them and to bring union charges against them, citing *Teamsters Local Union No. 657*, 342 NLRB 637 (2004) (NLRA protects right to bring internal union charges against union officers and right to criticize their performance). They alternatively propose that their conduct could arguably be considered a protected activity done to prevent harm to the other

union members and the union as a whole. The defendants conclude that the claims are preempted because their conduct was arguably prohibited by Section 8 and/or it was arguably protected by Section 7.[2]

**{¶24}** As to the latter argument, *intentionally* publishing information *known to be false* about a union member is not claimed to be protected. As to the former argument, appellant did not sue the business agent, the president, and vicariously the union because they may have retaliated against him. Why they engaged in the behavior emphasized above was irrelevant to appellant's case. Even if they can devise reasons for acting that are prohibited under the act, this does not answer the question of whether the *Garmon* exception applies here.

**{¶25}** On this issue, there is a case in appellant's favor regarding the conduct constituting intentional defamation. In *Linn*, an assistant manager filed a libel action against the union stating that a defamatory statement was circulated about him. *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.E.2d 582 (1966). The United States Supreme Court noted that under a formalistic application of *Garmon*, the suit would have been preempted. *Id.* at 61-62. Yet, the Court applied the exception to the *Garmon* rule for various reasons. *Id.*

**{¶26}** First, the underlying conduct, the intentional circulation of defamatory material known to be false, was not protected by the NLRA, and there was thus no risk that permitting the state cause of action to proceed would result in state regulation of conduct that Congress intended to protect. *Id.* Second, the Court recognized "an overriding state interest" in protecting residents from malicious libels that was "deeply rooted in local feeling and responsibility." *Id.* Third, the Court found little risk the state cause of action would interfere with the effective administration of national labor policy as the NLRB would be unconcerned with whether the words were defamatory while the state court would be unconcerned with whether they were coercive or misleading. *Id.*

---

[2]At one point, the defendants note that appellant filed charges with the NLRB and characterize this suit as a "second bite of the apple." However, those charges, attached to the defendants' summary judgment motion, are not related to defamation and tortious interference surrounding the act of the mailing appellant's union personnel file to his employer.

**{¶27}** Moreover, the *Linn* Court pointed out that NLRB would lack authority to provide the defamed individual with damages. *Id.* at 63. The Court then restricted the scope of that exception by holding that state damages actions in this context would escape preemption only if limited to defamatory statements published with knowledge or reckless disregard of their falsity. *Id.*, using the standards from *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.E.2d 686 (1964).

**{¶28}** Although we are to view the conduct rather than the cause of action, the alleged conduct in our case (intentionally publishing information known to be false which allegedly causes actual damages due to firing) is equivalent to the conduct in *Linn*. Thus, we hold that the *Linn* rationale applies to the intentional defamation claim here, and that such claim is not preempted. The negligent defamation claim, however, would not fall under the *Garmon* exception pursuant to *Linn* as it alleges less than knowledge or reckless disregard of the falsity, and thus, the negligent defamation claim is preempted.

**{¶29}** This leaves us to evaluate the conduct underlying the tortious interference claim. In one case cited by the parties, an employee claimed that his union arbitrarily refused to refer him for a job, alleging tortious interference with his right to contract for employment and breach of a promise implicit in his membership not to deny him the right to work. *Plumbers v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.E.2d 638 (1963). The Court stated that concurrent state court action would significantly impair the functioning of the federal system because if an unfair labor practice charge had been filed, the NLRB may have concluded that the refusal to refer the employee was a lawful hiring hall practice. *Id. See also Iron Workers v. Perko*, 373 U.S. 701, 83 S.Ct. 1429, 10 L.E.2d 646 (1963) (a companion case).

**{¶30}** Yet, the *Linn* rationale, which was released three years after *Plumbers*, can be applied to certain aspects of the tortious interference cause of action here. That is, appellant alleges interference by sending information that was knowingly false, hearsay, and confidential. The allegations that knowingly false information interfered with his business relationship falls under the *Linn* rationale (the *Garmon* exception). Whereas, whether the information was in fact confidential or whether it was proper for them to send hearsay is more of a labor issue and does not fit in the *Garmon*

exception applied in *Linn*. In other words, we hold that to the extent the tortious interference claim relies on intentional defamation, it is not preempted pursuant to *Linn*, and to the extent it relies upon other conduct, it is preempted by *Garmon* under the *Plumbers* rationale.

**{¶31}** Finally, the defendants suggest that certain elements of each cause of action (unprivileged for defamation and not justified for tortious interference) will require delving into the collective bargaining agreement. As appellant argues, the inapplicability of the collective bargaining agreement to these claims was already decided by the federal court when it remanded and refused to allow removal with the specific finding that these claims did not involve the collective bargaining agreement. In any event, contrary to their general argument, they would not have a duty under federal law to provide knowingly false statements (the only ones found above not to be preempted).

## CONCLUSION

**{¶32}** For the foregoing reasons, the judgment of the trial court finding all claims preempted by the NLRA is reversed and remanded in part. Appellant's intentional defamation claim is not preempted and can remain in state court. Appellant's tortious interference claim can remain in state court but only to the extent that it is based upon intentional defamation. The dismissal of appellant's negligent defamation claim is affirmed as such claim is preempted by the NLRA.

Donofrio, J., concurs.
DeGenaro, J., concurs.