**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-1688**

---

PESSOA CONSTRUCTION COMPANY,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

---

**No. 11-1776**

---

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

PESSOA CONSTRUCTION COMPANY,

Respondent.

---

On Petition for Review and Cross-application for Enforcement of an Order of the National Labor Relations Board. (5-CA-34547; 5-CA-34761; 5-CA-35083)

---

Argued: December 4, 2012          Decided: January 25, 2013

---

Before TRAXLER, Chief Judge, and WILKINSON and DUNCAN, Circuit Judges.

---

Petition for review denied; cross-application for enforcement granted by unpublished per curiam opinion.

————————————

**ARGUED:** Michael E. Avakian, Washington, D.C., for Pessoa Construction Company. David A. Seid, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board. **ON BRIEF:** Lafe E. Solomon, Acting General Counsel, Celeste J. Mattina, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Ruth E. Burdick, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Pessoa Construction Company ("Company") discharged William Membrino shortly after his participation in a union meeting. The union filed charges with respondent National Labor Relations Board ("NLRB") challenging, inter alia, the Company's alleged surveillance of Membrino's union activities, its unilateral modification of the terms of Membrino's employment, and its decision to terminate Membrino. An administrative law judge found that the Company's actions violated the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, and subsequently ordered Membrino reinstated with back pay. A three-member panel of the NLRB affirmed the ALJ's decision in all aspects relevant to this appeal. Because substantial evidence supports the NLRB's decision, we deny the Company's petition for review and grant the Board's cross-petition for enforcement.

I.

Pessoa Construction Company is a highway construction contractor based in Fairmont Heights, Maryland, with multiple job sites throughout the region. In early 2008, the Laborers' International Union of North America began efforts to organize the Company's employees, and the union was certified that summer. At a union meeting on September 30, 2008, employee

3

William Membrino asked whether the Company was obligated to pay him and other employees more for travel time to and from job sites. He also asked whether the Company's owner, Julio Pessoa, was correct when he stated that the Company could not provide Membrino with a raise because of the union. The following day, Pessoa asked Michael Moltz, another Company employee who participated in the meeting, whether Membrino was in attendance. Moltz indicated that Membrino was in fact present.

Two weeks after the union meeting, Membrino met with Pessoa to request an increase in compensation. During the conversation, Pessoa indicated that he was aware that "somebody" at the union meeting had raised the issue of compensation for travel time and stated that the Company could not afford to pay employees for such time. Four days later, Membrino and another employee, Nicholas Cappetta, were notified that they would no longer be able to drive their Company trucks to and from their job sites because each truck was to remain parked overnight at its respective site. No other employee received such a notice.

On October 23, 2008, a hydraulic excavator in use on one of the Company's job sites collided with Membrino's dump truck and caused significant damage. Shortly afterward, Membrino contacted his foremen and notified them of the accident. One of the foremen, Keith Reeder, advised Membrino and the excavator driver that they each needed to complete an accident report detailing

4

the circumstances of the collision. Neither of the foremen told Membrino that he needed to speak directly to Pessoa regarding the accident. Membrino drafted a statement describing what happened and drew a diagram to complement his written account. Reeder faxed the statement to the Company's offices several hours later.

Membrino returned to the yard at the end of the workday and followed up with the Company dispatcher, Juan Infante, regarding whether a drug test was necessary in light of the accident. The dispatcher advised Membrino that he did not need to complete a drug screening, and Membrino subsequently left work for the day. Later that evening, Membrino's supervisor called to tell Membrino that he had been terminated. Membrino followed up by contacting Pessoa directly. When pressed for a reason for the termination, Pessoa stated that Membrino's "head is not on [sic] the company no more," as evidenced by the fact that Membrino first allowed the accident to occur and then failed to personally report it to Pessoa. J.A. 22.

Based on the foregoing facts, the union filed multiple unfair labor practice charges with the NLRB. The NLRB General Counsel ("General Counsel") then issued a complaint alleging, inter alia, that (1) the Company violated 29 U.S.C. § 158(a)(1) by creating the impression that Membrino's union activities were under surveillance; (2) the Company violated 29 U.S.C. §

5

158(a)(1) and (a)(3) by responding to Membrino's union participation by preventing him from driving his company vehicle to work and eventually terminating him; and (3) the Company violated 29 U.S.C. § 158(a)(1) and (a)(5) by modifying its vehicle-use policy without bargaining with the union beforehand.

Following a hearing, an administrative law judge found that the Company had engaged in the alleged unfair labor practices. With respect to the surveillance claim, the ALJ concluded that the Company violated 29 U.S.C. § 158(a)(1) when Julio Pessoa created "an impression of surveillance" by indicating that the Company was "closely monitoring the extent of an employee's union involvement." J.A. 17-18. The ALJ further found that, based on Pessoa's statements, the timing of the adverse employment actions, and comparator evidence, the Company discriminated against Membrino's union activities in violation of 29 U.S.C. § 158(a)(1) and (a)(3) by changing his working conditions and subsequently terminating him. Finally, the ALJ concluded that the Company's unilateral change to its vehicle-use policy was unlawful because, when employees are represented by a union, 29 U.S.C. § 158(a)(5) requires an employer to bargain with the union before changing employment terms, and the Company failed to undertake such bargaining here.

The ALJ ordered the Company to reinstate Membrino with back pay, make both Membrino and Cappetta whole for any losses that

6

resulted from the unilateral change to their employment terms, and post a notice of union members' rights on Company job sites. A three-member panel of the NLRB reviewed the ALJ's ruling and affirmed on all issues relevant to this appeal. The Company now petitions for review of the NLRB order, and the Board cross-petitions for enforcement of that order.

## II.

The NLRB determined that the Company committed multiple violations of the NLRA, and the decision below is entitled to deference in this court. The NLRB's factual findings and application of law to facts are binding "if they are supported by substantial evidence on the record as a whole." WXGI, Inc. v. NLRB, 243 F.3d 833, 840 (4th Cir. 2001) (citing 29 U.S.C. § 160(e), (f); Sam's Club v. NLRB, 173 F.3d 233, 239 (4th Cir. 1999)). This court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). And, although we review legal conclusions de novo, we must defer to the NLRB's interpretation of the NLRA "if it is reasonably defensible." Indus. TurnAround Corp. v. NLRB, 115 F.3d 248, 251 (4th Cir. 1997). For the reasons that follow, we conclude that the NLRB's order must be enforced.

7

A.

Pursuant to 29 U.S.C. § 158(a)(1), an employer may not "interfere with, restrain, or coerce employees in the exercise of" their union rights. In determining whether an employer has violated this provision, we look to "whether, under all of the circumstances, the employer's conduct may reasonably tend to coerce or intimidate employees." NLRB v. Air Contact Transp., Inc., 403 F.3d 206, 212 (4th Cir. 2005) (quoting Medeco Sec. Locks, Inc. v. NLRB, 142 F.3d 733, 745 (4th Cir. 1998) (internal quotation marks omitted)). Substantial evidence supports the NLRB's determination that the Company -- acting through owner Julio Pessoa -- engaged in such conduct.

While meeting with Membrino, Pessoa indicated that he knew both that Membrino was involved in the union meeting two weeks earlier and that Membrino had asked about compensation for travel time at that meeting. It is well settled that a single conversation can violate § 158(a)(1) if the employer's statement contains "sufficiently specific information to convey the impression that the employer or its agents has conducted union surveillance." NLRB v. Grand Canyon Mining Co., 116 F.3d 1039, 1046 (4th Cir. 1997). Here, Pessoa's statement suggested that the Company was tracking not only which of its employees participated in union meetings but also what opinions participants expressed in those meetings. Under our standard of

8

review, the statement is sufficient to support the NLRB's finding that the Company violated 29 U.S.C. § 158(a)(1) by creating an impression of union surveillance.

B.

The record also substantiates the NLRB's conclusion that the Company acted unlawfully when it (1) implemented a new policy preventing Membrino from driving a company vehicle to his jobsite and (2) discharged Membrino. Pursuant to 29 U.S.C. § 158(a)(3), an employer is prohibited from engaging in "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." In Wright Line, 251 N.L.R.B. 1083 (1980), the NLRB established a two-step framework for analyzing cases in which an employee alleges discrimination and an employer responds by citing legitimate business purposes for the challenged decision. TNT Logistics of N. Am., Inc. v. NLRB, 413 F.3d 402, 406 (4th Cir. 2005). To begin, "the NLRB General Counsel must prove by a preponderance of the evidence that anti-union animus was a substantial or motivating factor in the discharge" or other adverse employment action. Dorsey Trailers, Inc. v. NLRB, 233 F.3d 831, 839 (4th Cir. 2000). After the General Counsel establishes its prima facie case, the burden shifts to the employer to prove "that the discharge would have occurred even in the absence of the protected activity." USF Red

9

Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th Cir. 2000). If "the employer's stated lawful reasons are non-existent or pretextual, the defense fails." Id. Here, the NLRB properly engaged in the Wright Line analysis, and substantial evidence supports its conclusion that the challenged adverse employment actions were motivated by anti-union animus rather than by legitimate business justifications.

1.

The Company failed to rebut the General Counsel's prima facie case that the Company limited Membrino's use of Company vehicles because of his union activities. To establish a prima facie case, the General Counsel must, as it did here, establish "(1) the existence of protected activity; (2) employer knowledge of that activity; (3) adverse employment action suffered by alleged discriminatees; and (4) a link, or nexus, between the employees' protected activity and the adverse employment action." Wal-Mart Stores, Inc., 352 N.L.R.B. No. 103, at *5 (2008). Membrino's attendance and participation at the September 30, 2008, union meeting constitutes protected activity, see Local 100 of United Ass'n of Journeymen & Apprentices v. Borden, 373 U.S. 690, 695 (1963), and there is no dispute that Pessoa was aware of the activity. The change to the vehicle-use policy was an adverse employment action because it required Membrino to secure his own transportation to and from his job site, which

10

was 35-40 miles from his home. And, finally, "the timing of the change, Pessoa's comments to Membrino . . ., and the unexplained failure to make the same change in the working conditions of other drivers" were sufficient to establish a nexus between Membrino's protected union activity and the change in policy. J.A. 19.

The Company argues that the rising cost of fuel and changing project requirements led to the decision to leave Company vehicles parked at job sites overnight. However, substantial evidence supports the NRLB's determination that the Company's justifications were pretextual and that its actions were thus unlawful. Several other truck drivers were not required to report for work at their job sites, and the policy was scrapped in short order even though work at Membrino's site -- 35-40 miles from the Company's main construction yard -- continued well after his termination. This evidence is sufficient to support the NLRB's decision to reject the Company's claimed justifications for the policy change.

2.

The Company also failed to rebut the General Counsel's prima facie case that Membrino was discharged because of his protected union activities. As discussed above, the Company was aware of Membrino's participation in the union meeting. The NLRB found that the requisite nexus between union participation and

11

Membrino's discharge was demonstrated by Pessoa's inquiry with another employee regarding Membrino's union activities, Pessoa's statements to Membrino, and the timing of the discharge relative to the foregoing two incidents.

The Company argues that it fired Membrino for legitimate, nondiscriminatory reasons, to wit, because he caused significant damage to his Company vehicle and because he failed to personally report the damage to Pessoa. Relying on (1) the Company's disparate treatment of Membrino relative to other employees who accidentally damaged Company equipment and (2) its termination of Membrino based on a policy which, "assuming it existed, was never communicated to him," the NLRB concluded that the Company's proffered justifications were pretextual and thus that Membrino's discharge was unlawful. J.A. 22.

The record provides adequate justification for the NLRB's finding of disparate treatment. Two Company employees, Juan Carlos Martinez and Purcell Smith, each caused significant accidental damage to Company equipment in the 2007–2009 timeframe, neither was terminated, and both were required only to reimburse the Company for the damage in order to maintain their employment. In the case of Martinez, he "neither wrote an accident report nor went to see Julio Pessoa the same day," yet he was not terminated. J.A. 39.

12

The record also substantiates the NLRB's finding that the Company did not have a policy requiring those involved in Company vehicle accidents to personally report to Pessoa. The Company employee handbook states: "In the case of a vehicular accident, all information should be reported immediately to your supervisor and the office." J.A. 161. There is no mention of reporting to Pessoa. Moreover, the Company's general superintendent testified that there were no additional accident-reporting procedures beyond the handbook requirement that those involved report the incident to their supervisor and file a written report with Pessoa's office.

Because there is substantial evidence to undermine both of the Company's proffered justifications for terminating Membrino -- that he damaged Company equipment and that he failed to personally report the damage to Pessoa -- we agree with the NLRB's finding that Membrino's discharge was the result of unlawful animus against his protected union activities.

C.

Finally, substantial evidence supports the NLRB's conclusion that the Company violated 29 U.S.C. § 158(a)(5) when it unilaterally changed its vehicle-use policy without offering the union an opportunity to bargain over the modification. The NLRA imposes a duty on employers to engage in collective bargaining with organized labor regarding "rates of pay, wages,

13

hours of employment, or other conditions of employment." 29 U.S.C. §§ 158(a)(5), 159(a). "Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate" and constitutes a violation of § 158(a)(5). NLRB v. Katz, 369 U.S. 736, 747 (1962).

As an initial matter, the Company argues that the change in its vehicle-use policy is "outside the scope" of the provision because it involves a decision about where and how the Company's property is stored. Petr's Br. at 66. However, the NLRB explicitly found that the change in vehicle-use policy "was a sufficiently significant change in the terms and conditions of Membrino and Cappetta's employment to put the new policy into the category of a mandatory subject of bargaining." J.A. 19. This interpretation of the statutory phrase "other conditions of employment" is at least "reasonably defensible," and we therefore defer to the NLRB's conclusion that the change falls within the coverage of § 158(a)(5). See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 891 (1984); Indus. TurnAround, 115 F.3d at 251.

It is undisputed that the Company never provided the union with notice of the proposed change, much less an opportunity to bargain over it. We agree with the NLRB's determination that the Company violated 29 U.S.C. § 158(a)(5) when it required Membrino and Cappetta to report to work at their job sites rather than at the Company's construction yard.

14

III.

For the foregoing reasons, this court grants enforcement of the NLRB's order and denies the Company's petition for review.[*]

PETITION FOR REVIEW DENIED;
CROSS-APPLICATION FOR ENFORCEMENT GRANTED

---

[*] The order may need to be modified to reflect the union's alleged decertification following the operative facts of this case. We leave any such modification to the discretion of the NLRB.