**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 15-1182**

———————————

NATIONAL LABOR RELATIONS BOARD,

> Petitioner,

v.

PESSOA CONSTRUCTION COMPANY,

> Respondent.

———————————

**No. 15-1251**

———————————

PESSOA CONSTRUCTION COMPANY,

> Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

> Respondent.

———————————

On Petition for Review and Cross-application for Enforcement of
an Order of the National Labor Relations Board. (05-CA-034547;
05-CA-034761; 05-CA-035083)

———————————

Argued: October 27, 2015          Decided: December 21, 2015

———————————

Before TRAXLER, Chief Judge, WILKINSON and DUNCAN, Circuit
Judges.

———————————

Petition for review denied and cross-application for enforcement granted by unpublished per curiam opinion.

---

**ARGUED**: David A. Seid, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner/Cross-Respondent. Michael E. Avakian, WIMBERLY, LAWSON & AVAKIAN, Washington, D.C., for Respondent/Cross-Petitioner. **ON BRIEF**: Richard F. Griffin, Jr., General Counsel, Jennifer Abruzzo, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner/Cross-Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pessoa Construction Company ("Pessoa") discharged its former employee, William Membrino ("Membrino"), from his position as a Commercial Motor Vehicle ("CMV") driver in 2008. The National Labor Relations Board (the "Board") found that Pessoa had discharged Membrino for engaging in union activities, in violation of §§ 8(a)(1) and (a)(3) of the National Labor Relations Act ("NLRA"), see 29 U.S.C. §§ 158(a)(1) and (a)(3), and ordered Pessoa to reinstate Membrino with backpay plus interest. We enforced the Board's order. See Pessoa Constr. Co. v. NLRB, 507 Fed. Appx. 304 (4th Cir. 2013) (per curiam).

In supplemental proceedings, the Board has now ordered Pessoa to pay Membrino $95,046.07, plus interest, in backpay. Pessoa petitions for review, asserting that its backpay liability should be $24,054. The Board applies for enforcement of its supplemental order. We deny Pessoa's petition for review and grant the Board's application for enforcement.

## I.

Under 29 U.S.C. § 160(c) of the NLRA, the Board is granted broad, but not unlimited, authority, to award backpay to an employee who has been fired for engaging in union activities. See Coronet Foods, Inc. v. NLRB, 158 F.3d 782, 788, 798 (4th Cir. 1998). The goal is "to restore the situation 'as nearly as possible, to that which would have obtained but for the

3

[employer's] illegal discrimination.'" Id. at 798 (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194 (1941)).

Because "backpay is within the 'empiric process of administration' Congress entrusted to the expertise of the Board," "we review the Board's backpay order for an abuse of . . . discretion." Id. (quoting Phelps, 313 U.S. at 194); see id. at 789 (noting that "the Board's choice of remedy, resting on the Board's 'fund of knowledge all its own,' must be given special respect by reviewing courts" (quoting NLRB v. Gissel Packing Co., 395 U.S. 575, 612 (1969)). "We must enforce the Board's chosen remedy unless it is arbitrary, capricious, or manifestly contrary to the statute." Id. at 788 (internal quotation marks omitted). "The [Board's] findings of fact must stand if 'supported by substantial evidence on the record considered as a whole.'" Id. (quoting 29 U.S.C. § 160(f)). "Only in very clear circumstances should courts override the Board's findings in th[is] area." Id. at 799.

Ordinarily, an unlawfully discharged employee is awarded backpay from the date of the unlawful discharge to the date the employer offers valid, unconditional reinstatement. See NLRB v. Waco Insulation, Inc., 567 F.2d 596, 603 (4th Cir. 1977). However, "[e]mployees who lose their jobs as a result of unfair labor practices must mitigate their damages by seeking interim employment." Coronet, 158 F.3d at 800. The employee "need not

4

actually obtain work," but he "must make . . . a reasonable effort to obtain interim employment." Id. (internal quotation marks omitted). A claimant's willful loss of interim earnings, such as when he voluntarily resigns employment without good cause, tolls the backpay period. See NLRB v. Pepsi Cola Bottling Co., 258 F.3d 305, 310 (4th Cir. 2001). Similarly, "[a]n employee who willfully loses employment by engaging in deliberate or gross misconduct is not entitled to backpay for a resulting earnings loss." Id. at 311 (internal quotation marks omitted).

In all cases, however, it is the offending employer's burden "to establish any affirmative defense which would lessen the amount of backpay owed to the victims of its unlawful practices." NLRB v. Mining Specialists, Inc., 326 F.3d 602, 605 (4th Cir. 2003). "And any doubts arising with regard to alleged affirmative defenses are to be resolved against the employer who committed the unfair labor practice." Id.; see also Coronet, 158 F.3d at 800 (noting that "[t]he Board may resolve any doubts against" the employer).

## II.

Membrino has worked as a commercial truckdriver since the early 1990s and, in this capacity, held a Class A commercial drivers license ("CDL") authorizing him to drive a variety of commercial vehicles. Membrino began working at Pessoa, a

5

highway construction contractor, in approximately 2003 or 2004. He left in June 2006 for another job, but returned at Pessoa's request in June 2007. On October 23, 2008, shortly after the Laborers' International Union of North America successfully unionized Pessoa's employees, Pessoa fired Membrino for his participation in union activities, in violation of the NLRA. The Board subsequently ordered Pessoa to reinstate Membrino with backpay, but he was not offered reinstatement until February 8, 2013, shortly after we affirmed the Board's original order.

Pursuant to the safety regulations of the Federal Motor Carrier Safety Administration ("FMCSA") of the United States Department of Transportation ("DOT"), a CMV driver is required, among other things, to undergo a medical examination and obtain a medical examiner's certificate that he or she is physically qualified to safely operate a CMV. See 49 C.F.R. §§ 391.11(b)(4), 391.41, 391.43, & 391.45. The driver must be medically certified every 24 months. See 49 C.F.R. § 391.45(b)(1). However, if the driver's "ability to perform [his or her] normal duties has been impaired by a physical or mental injury or disease," medical certification is again required. 49 C.F.R. § 391.45(c). A driver is not qualified to drive if he has a "current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be

accompanied by syncope, dyspnea, collapse, or congestive cardiac failure."  49 C.F.R. § 391.41(b)(4).

Membrino's CDL license was valid as of October 24, 2008, the first day after his unlawful termination by Pessoa, and he immediately began to search for interim employment as a CMV driver.  On November 3, 2008, however, Membrino experienced chest pain and numbness in his arms.  He was diagnosed with unstable angina pectoris, acute ischemic heart disease, and hypertension.  He underwent a coronary angiography, and an angioplasty to treat the condition.  On November 4, Membrino was released from the hospital with a prescription for high blood pressure and cholesterol.  He was advised to refrain from driving for two days and from heavy lifting for two weeks, and was told to follow-up with his physician in 1-2 weeks.

On November 29, 2008, Membrino resumed his search for interim employment.  He initially had no luck, but ultimately secured six interim terms of employment, the last of which he opted to continue instead of accepting Pessoa's offer of reinstatement.

Membrino landed his first interim job with Portable Storage in April 2010.  As the final step in the hiring process, Membrino was required to pass the DOT medical examination and receive the medical examiner's certification (the "DOT card") required under the FMCSA regulations to drive a CMV.  On April

7

23, 2010, Membrino passed the physical and received his DOT card. However, Membrino received only a temporary, 3-month card due to his diagnosis of hypertension. Membrino began working for Portable Storage on April 27. One week later, however, Portable Storage eliminated his position, which had been newly created, because the route was not cost-effective.[1]

On May 14, 2010, Membrino successfully applied for a position with Aggregate Industries. Aggregate likewise required Membrino to complete a DOT physical and obtain a new DOT card. Membrino again passed the physical, and was again given a temporary 3-month DOT card due to his hypertension. Membrino began working for Aggregate on June 2, 2010, and he passed at least one additional DOT physical thereafter. On December 17, however, Membrino was fired after he backed his truck into a tree. He began working at Cylos, Inc., on December 21, 2010, but was fired on December 30, for leaving work without draining the water lines in his truck. Membrino claimed that the mechanic was aware of the water in the lines and had assured Membrino that he would drain them, but Membrino was terminated nonetheless.

---

[1] A Portable Storage witness testified that Membrino was fired for failing to report for work for three consecutive days. However, the ALJ credited Membrino's version of the events because the Portable Storage witness had no personal knowledge about the circumstances that led to Membrino's departure.

On February 25, 2011, Membrino was hired by AD&C Management Company, where he remained until he voluntarily left to begin work for Reddy Ice. He worked for Reddy Ice from June 1, 2011, until the end of July 2011, when he was hired by the Washington Suburban Sanitary Commission ("WSSC"). He began working at WSSC on August 1, 2011. By the time Pessoa made its valid offer to reinstate Membrino on February 8, 2013, Membrino's income from WSSC was effectively eliminating Pessoa's backpay liability. Membrino declined the offer of reinstatement.

A compliance specification and notice of hearing was thereafter issued to Pessoa in order to resolve Pessoa's outstanding backpay liability. Membrino's gross backpay period ran from October 24, 2008, the first day of his unemployment, to February 8, 2013, when he was offered reinstatement, and his gross backpay was calculated to be $199,285.90. The time period from November 3 to November 28, 2008, when Membrino was admittedly not looking for employment following his hospitalization, was excluded from the gross backpay period. Membrino's wages from his interim employment were deducted from the gross backpay calculation. The General Counsel alleged that Pessoa owed Membrino $107,929 in net backpay, plus interest. Pessoa claimed that its backpay liability was only $912, all of which was incurred prior to Membrino's hospitalization.

At the conclusion of the hearing, the Administrative Law Judge ("ALJ") rejected Pessoa's challenges to the gross backpay calculation, including its claim that backpay liability should have been tolled from November 3, 2008, to April 23, 2010, due to Membrino's medical condition. However, the ALJ did reduce the gross backpay to account for several periods when Membrino's CDL had been suspended for his failure to pay fines and support obligations. The ALJ found that Membrino had made reasonable efforts to obtain interim employment, and that Membrino's departures from Portable Storage, Aggregate Industries, and Cylos, Inc., were not the result of willful misconduct. With the adjustments, the final award was computed to be $95,046.07, plus interest. The Board affirmed.

III.

A.

Pessoa's primary claim is that the FMCSA regulations governing CMV drivers take precedence over the NLRA, and that Membrino's diagnosis of angina pectoris on November 3, 2008, immediately disqualified him from driving a CMV. Pessoa argues that Membrino remained unavailable for work as a CMV driver, and ineligible for backpay under the NLRA, until Membrino passed the DOT physical and obtained his new DOT card on April 23, 2010, for Portable Storage.

The ALJ rejected Pessoa's claim, noting that neither Pessoa "nor potential interim employers (such as Portable Storage and Aggregate) required Membrino to present a current DOT card as a precondition to considering him for vacant CDL positions. Instead, potential employers allowed Membrino to apply for vacant CDL positions, and then sent him for a DOT physical only as a final step to fulfill before starting work." J.A. 22. Moreover, "Membrino complied with that procedure when asked to do so, and passed his DOT physicals when they were required." J.A. 22. "Since there [was] no evidence of a period of time [after November 28, 2008] where Membrino would not have been able to pass a DOT physical if requested," the ALJ rejected Pessoa's "request to toll the backpay period on that basis." J.A. 22. The Board affirmed.

In its petition for review, Pessoa contends that Membrino was ineligible to work as a CMV driver as a matter of law and, therefore, that "the Board's chosen remedy trenches upon" the federal laws and regulations governing CMV operators, which are "outside the Board's competence to administer." Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 147 (2002). We disagree.

In Hoffman, the Supreme Court held that an undocumented alien was disqualified from a backpay award under the NLRA, even though he had been fired for engaging in union activities. The employee had at all times been illegally present and

11

unauthorized to work in the United States. He was subject to criminal punishment for obtaining employment through the use of false documents. And he had, therefore, "qualifie[d] for the Board's award . . . only by remaining inside the United States illegally." Id. at 150. Under such circumstances, the Court held that policy arguments counseled in favor of according the federal immigration laws precedence over the NLRA. See id. at 150 (noting that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations").

Here, unlike in Hoffman, the Board's backpay award does not "trench[] upon" the FMCSA regulations or the safety policies that they serve. id. at 147. Membrino held a valid CMV license for many years prior to and during his employment with Pessoa. He was qualified for employment under the federal laws when he was unlawfully terminated and when he began his search for interim employment. Moreover, even if we were to conclude that the FMCSA regulations required Membrino to be re-examined and re-certified after his hospitalization, the regulations only required him to do so prior to driving a CMV. The regulations did not require Membrino to voluntarily undergo a DOT physical at his own expense or hold a current DOT card in order to search for suitable interim employment as a CMV driver to mitigate his

12

losses. Accordingly, the Board's remedial order does not conflict with the requirements of the FMCSA regulations.

The Board's remedial order also does not contravene the safety policies served by the FMCSA regulations. The Board required Pessoa to reinstate Membrino as a CMV driver and to make him whole through the payment of backpay. But the Board's order did not require Pessoa to allow Membrino to drive a CMV despite any regulatory disqualification, nor would it have required Pessoa to reinstate or recompense Membrino regardless of his medical or legal qualification to return to work as a CMV driver on or after November 29, 2008.

Under the NLRA, Pessoa bore the burden of establishing an affirmative defense based upon Membrino's unavailability to work, and any doubts must be resolved against it. See Mining Specialists, 326 F.3d at 605. Pessoa failed to demonstrate that Membrino had a current clinical diagnosis of acute angina pectoris on November 29, 2008, that would have rendered him physically disqualified from operating a CMV, and failed to demonstrate that he would not have passed a DOT physical as of that date. Indeed, all indications are to the contrary. By all accounts, the medical treatment Membrino received for his acute angina pectoris was a success. He was released from the hospital on November 4, and told that he should avoid driving for two days and heavy lifting for two weeks. He recuperated

13

for several weeks, and resumed his efforts to obtain interim work as a CMV driver on November 29. His follow-up health appointments were uneventful and he passed every DOT physical examination that he was required to take by his interim employers thereafter.

Accordingly, we hold that the Board did not err as a matter of law in rejecting Pessoa's claim that the FMCSA regulations mandated that it toll the backpay period from November 28, 2008, to April 23, 2010. Nor did the Board abuse its discretion in finding that Pessoa failed to establish that Membrino suffered from a medical condition that would have disqualified him from obtaining a DOT card or from safely operating a CMV during that time period.

## B.

Pessoa next contends that the Board should have tolled Membrino's backpay period because he made several misrepresentations in the employment applications that he submitted to his interim employers. Membrino does not deny that he made such misrepresentations. For example, he indicated that he had been self-employed as "Membrino Trucking" or "Membrino Delivery Services," to cover the gaps in his employment history. He failed to disclose several periods of time that his CDL license had been suspended or revoked. And he at times omitted or concealed the fact that he had been convicted of two felonies

14

more than 15 years before. Membrino "explained that he made these false statements and omissions because he desperately needed work." J.A. 17 n.24; see also J.A. 13 n.11 ("Membrino was clear and forthright in explaining that he was in dire need of employment because he lacked alternat[ive] sources of income."). The Board credited (but did not condone) Membrino's explanation for why he made the misrepresentations to his interim employers, and declined to offset Pessoa's backpay liability for its illegal termination of Membrino on this basis.

At the outset, we note that Pessoa's argument on this basis is not altogether clear. Pessoa appears to contend that Membrino's misrepresentations amounted to a willful violation of the FMCSA regulations, which require truthful answers on such applications. See, e.g., 49 C.F.R. §§ 383.35, 391.21. However, Pessoa has only explicitly sought to reduce the backpay award for the period from November 28, 2008, to April 23, 2010 (to $24,054), based upon Membrino's medical diagnosis of angina pectoris and his DOT-card status. Any misrepresentations made by Membrino to interim employers in or after April 2010, could not have resulted in a failure on his part to mitigate losses during the challenged time period.

To the extent Pessoa argues that the Board was required to find that similar misrepresentations might have prevented Membrino from securing interim employment prior to April 2010,

15

or that Membrino's misrepresentations caused him to lose employment <u>after</u> April 2010, Pessoa has failed to demonstrate that the Board erred as a matter of law or abused its discretion in rejecting them.

Membrino's misrepresentations, even if technically violative of the FMSCA regulations, did not automatically disqualify him from being hired nor require that he be fired by the employer. <u>See</u> 49 C.F.R. § 383.35, 391.21. Consequently, the Board's backpay order does not conflict with the FMCSA regulations. Nor is there any evidence that Membrino's misrepresentations affected the adequacy of his job search or the retention of his interim employment. As noted by the Board, Pessoa "failed to show that Membrino's job search was unreasonably narrow or limited in any respect" and "did not present any evidence that th[e] false statements prevented Membrino from obtaining or retaining employment during the backpay period." J.A. 24.

We hold that the Board did not exceed its authority or abuse its discretion by failing to toll the backpay period based upon misrepresentations that Membrino made in the employment applications to his interim employers. Even if Membrino's representations were willful in character, there is no evidence that they actually resulted in an earnings loss. If anything, the misrepresentations inured to the benefit of Pessoa in that

16

they mitigated the earnings losses occasioned by Pessoa's illegal termination of Membrino under the NLRA.

## C.

Pessoa's final claim is that the ALJ erred in failing to allow it to impeach Membrino's credibility based upon his two prior felony convictions. We disagree.

Pessoa argued before the ALJ that Membrino conducted an inadequate search for interim employment and engaged in willful misconduct that resulted in his being fired by Portable Storage, Aggregate Industries, and Cylos. The ALJ found that Membrino's job search was adequate and credited Membrino's testimony regarding the reasons for his terminations. The Board affirmed. Pessoa contends that it should have been allowed to challenge Membrino's credibility as to the reasonableness of his efforts to obtain and retain such interim employment with Membrino's criminal history.

When more than 10 years have passed since a witness's conviction, the conviction is not admissible to attack the witness's character for truthfulness unless: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

17

During the hearing before the ALJ, Pessoa discovered that Membrino had prior convictions for distribution of a controlled substance in 1997 and for possession of a handgun in 1995, well past the 10-year threshold set forth in Federal Rule of Evidence 609(b). The ALJ ruled that Membrino's criminal record was "not admissible under Rule 609 because of the passage of time, the fact that any probative value of the evidence does not substantially outweigh its prejudicial nature, and the fact that [Pessoa] did not provide reasonable written notice of its intent to use Rule 609 evidence such that the General Counsel would have a fair opportunity to oppose the request." J.A. 12.

Although Pessoa claimed that it should be excused from the prior-notice requirement because it had not learned of Membrino's felony convictions prior to the hearing, the ALJ noted that Pessoa had sufficient information in its employee files to discover the convictions well in advance of the hearing. And "to the extent that [Pessoa sought] to use the proffered Rule 609 evidence to establish that Membrino made false statements on job applications to interim employers," the ALJ ruled that the evidence was "cumulative and irrelevant in light of the admissions that Membrino made elsewhere in the record." J.A. 12. We find no abuse of discretion in the ALJ's decision to exclude evidence of Membrino's prior convictions.

18

To the extent Pessoa otherwise challenges the ALJ's credibility determinations regarding its affirmative defenses, we likewise find no abuse of discretion. It is well settled that credibility determinations will be overturned only in "extraordinary circumstances." WXGI, Inc. v. NLRB, 243 F.3d 833, 842 (4th Cir. 2001) (internal quotation marks omitted). Such "circumstances include those instances when a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Id. (internal quotation marks omitted). Here, there is no extraordinary basis for the court to reverse the Board's credibility determinations.

D.

In its Reply Brief, Pessoa argues that the Board's gross backpay calculation was inflated because it was based in part on overtime hours that Membrino had worked at Pessoa prior to his termination.[2] Because Pessoa did not challenge the gross backpay calculation on this ground before the Board, we lack jurisdiction to consider it. See 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member,

---

[2] Pessoa also raised the issue in a Rule 28(j) letter after it filed its opening brief, to which the Board filed a response. Pending before us is the Board's motion to strike Pessoa's Reply to the Board's Response to Pessoa's Rule 28(j) letter, which we now grant. See Fed. R. App. P. 28(j).

19

agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). Even if Pessoa had raised the issue before the Board, we would decline to address it here. See U.S. S.E.C. v. Pirate Inv., LLC, 580 F.3d 233, 255 n.23 (4th Cir. 2009) (per curiam) ("Ordinarily we do not consider arguments raised for the first time in a reply brief.").

IV.

For the foregoing reasons, we grant the Board's application for enforcement and deny Pessoa's petition for review.

APPLICATION FOR ENFORCEMENT GRANTED;
PETITION FOR REVIEW DENIED.